HENRY LEWIS

*v.*

MARY KING *et al.*

*Opinion filed June 17, 1899.*

1. MARRIAGE—*marriage between slaves is validated by ratification after emancipation.* A marriage between persons in a state of slavery is rendered valid by their ratification of the same after emancipation, and children born thereafter are legitimate.

2. SAME—*compliance with the Kentucky statute legitimatizes previously born children.* Compliance with the statute of Kentucky relating to the marriage of negroes and mulattoes, by persons living in that State as husband and wife while in slavery, legitimatizes previously born issue.

3. REAL PROPERTY—*effect of widow's conveyance of homestead and dower before assignment.* A surviving husband or wife cannot convey the right of homestead and dower to a person other than the owner of the fee before the same has been set off and assigned, and an attempted conveyance under such circumstances does not affect the rights of the heirs.

4. APPEALS AND ERRORS—*errors not suggested in brief not considered on appeal.* Alleged errors not stated or suggested in appellant's brief are waived, and will not be considered on appeal though they be assigned on the record.

APPEAL from the Circuit Court of Pope county; the Hon. JOSEPH P. ROBARTS, Judge, presiding.

This is a bill for partition. The original bill was filed in 1892 by the daughter and grandchildren of one Edward Baker, deceased, against Mary E. Baker, his widow, and the appellant, Henry Lewis, lessee and grantee of said widow, and one John McGhee, tenant under Lewis. An

amended bill was filed on May 15, 1895; and Eliza De-Graffenreed, one of the grandchildren of Edward Baker, deceased, having died on September 24, 1894, a supplemental bill was filed on October 14, 1895. The facts as set up in the original, amended and supplemental bills are, that Edward Baker died intestate on July 18, 1891, seized in fee simple of the lands described in the bill, being one hundred acres more or less; that he left him surviving his widow, Mary E. Baker, and, as his only heirs-at-law, his daughter, Harriet Baker Wagner, and his three grandchildren Mary J. King, Eliza DeGraffenreed, and Eli Topsico, said grandchildren being the only surviving children of Amanda Topsico, deceased. By the death of Eliza DeGraffenreed, who died intestate without issue, her undivided interest in the premises was inherited by her father, Rudolph Topsico, her sister, Mary J. King, her brother, Eli Topsico, and her husband Thomas DeGraffenreed. The supplemental bill avers, that said Harriet Baker Wagner, Mary J. King, Eli Topsico, Thomas DeGraffenreed and Rudolph Topsico are the sole owners of the lands, as tenants in common, in the proportions set out in the bill. Mary E. Baker, the widow of the deceased intestate, had been only married to him a few months, his wife Mary, or Mary Elizabeth, or Betsy Baker, the mother of Harriet Baker Wagner and Amanda Topsico, having died years before his death. Edward Baker left no children by Mary E. Baker.

The bills charge that, on December 9, 1891, Mary E. Baker, the widow, who was entitled to homestead and dower in the premises in question, before her homestead was assigned to her, executed a lease of the premises to Henry Lewis for the term of fifty-nine years, and abandoned the land, and moved to the State of Kentucky, where she has since remained; and that the appellant, Henry Lewis, went into the possession of the land by his tenant, William McGhee, and has remained in such possession ever since. It is also charged that, on December 9,

1891, Mary E. Baker, the widow, executed a warranty deed to Henry Lewis, the appellant, conveying said premises to him. The relief prayed for is for partition, and that the lease and deed to Lewis be set aside, and that the complainants have process for possession against Lewis. It is also averred, that Mary E. Baker, the widow, released her dower and homestead rights in said premises to the said heirs of Edward Baker after the execution of said lease and deed to Lewis. In his answers the appellant, Lewis, denied that Amanda Topsico and Harriet Baker Wagner were the children of Edward Baker, or his heirs-at-law, or that the parties above named were the owners of the land in fee.

Upon the hearing the court rendered a decree in favor of the appellees here, complainants below, granting the relief asked; and finding that the undivided interests of the parties were as set forth in the bill; that Mary E. Baker did, on May 15, 1895, convey to Harriet Baker Wagner, Eli Topsico, Mary J. King, Thomas DeGraffenreed and Rudolph Topsico all her interest in the premises, including homestead and dower; that Amanda Topsico and Harriet Baker Wagner were the legitimate children of Edward Baker, born of his wife Betsy Baker; that the woman Betsy Baker, called Betsy Baker by some of the witnesses and Mary Elizabeth Baker by others, and Mary Baker by others, was the same person, and was legally married to Edward Baker under the Kentucky statute offered in evidence; that such marriage legitimatized said Amanda and Harriet, who were the only lawful children of Edward Baker; that the lease and deed from Mary E. Baker, the widow, to Henry Lewis conveyed nothing as against the heirs of Edward Baker; that the last named deed was a nullity; and the decree directed that said lease and deed should be canceled, and that the appellant, Lewis, should surrender the premises to the owners. The decree also ordered partition among the parties, and appointed commissioners to make the same. The present

appeal is prosecuted from the decree so entered by the circuit court.

W. S. MORRIS, and ETHAR E. LEWIS, for appellant.

C. L. V. MULKEY, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The deceased, Edward Baker, who died seized of the lands here in controversy, was a negro, and for a number of years, immediately prior to the late civil war, was the slave of one Daniel Hillman. He lived, for many years before and after the war, at a point, known as Hillman's Iron Works located on the Cumberland river in Trigg county, Kentucky.

The appellees affirm, that Edward Baker was the husband of Mary, or Mary Elizabeth, or Betsy Baker, she having been called by all three of these names; that his marriage to her was or was made lawful; and that two children were born to him and said Betsy, as the issue of said marriage, to-wit, Amanda Baker, afterwards the wife of Rudolph Topsico, and Harriet Baker, afterwards the wife of a man named Wagner. The appellant insists, there was no such lawful marriage between these parties, and that said Amanda and Harriet, if they were the children of Edward Baker, were his illegitimate children.

If Amanda Topsico and Harriet Baker Wagner were the legitimate or legitimatized children of Edward Baker, then the appellees are the owners, as tenants in common, of the property here in question, and entitled to a partition of the same, and to the relief asked for in their bill. If, however, as is contended by appellant, Edward Baker left no lawful descendants, nor collateral kindred, and no legitimate children, then his widow, Mary E. Baker, acquired the fee simple title in severalty to these premises, and said title passed to the appellant, Henry Lewis, by the deed executed to him by the widow.

It is apparent, therefore, that the main question in the case is a question of fact, and that question of fact is, whether or not there was a lawful marriage between Edward Baker and Betsy Baker, and whether Amanda and Harriet were his legitimate children. The testimony upon this question of fact is conflicting. Counsel for appellant says in his brief: "Facts tending to prove, that Amanda and Harriet were the lawful issue of Edward and Mary E. Baker, and facts tending to disprove their legitimacy,. are also contained in the depositions and documentary evidence." After a careful examination of the testimony, we are of the opinion that the preponderance of the evidence is in favor of the finding of the court below, and that the marriage was made legal, and that said Amanda and Harriet were legitimatized, if not legitimate, children of the deceased, Edward Baker. It would serve no good purpose to analyze in detail the testimony of all the witnesses upon this subject. Six witnesses for the appellees, as against four for the appellant, testify that Edward Baker and Betsy Baker lived together, as man and wife, both before the late civil war, and after they had both become free as the result of the war. The witnesses of appellees seem to have had better facilities for knowing the facts than the witnesses opposed to them.

In the late case of *Butler* v. *Butler*, 161 Ill. 451, we held that a marriage between persons in a state of slavery is not binding upon the parties to it, if repudiated upon emancipation; and that ratification of a marriage between slaves by cohabitation of the parties after emancipation renders such marriage valid. In the *Butler case*, we said (p. 455): "While the decisions are not harmonious in all respects, they practically agree that, while such marriages were recognized and encouraged in all of the States where slavery existed, they gave rise to no civil rights, and were not binding upon the parties to them if repudiated upon emancipation. They were regarded as inchoate and imperfect obligations, having substan-

tially the same binding force as, and no more than, marriages between infants at common law, the boy being under the age of fourteen and the girl under the age of twelve years, or between lunatics or insane persons. Such marriages were voidable, and might be repudiated or ratified when the disability ceased." It is said by the learned author of the article on "Slaves and Slavery," in volume 22 Am. & Eng. Ency. of Law: "Emancipation alone, whether general or special, apparently had no effect upon the slave marriage. But emancipation, accompanied by the consent of the parties to a transmutation of the slave marriage into a legal one, or by continued cohabitation, had the effect of rendering the imperfect slave marriage a valid and legal union." (P. 790).

Some of the testimony here not only establishes the fact, that Edward Baker and Betsy Baker lived together as man and wife while they were slaves before the late civil war, but that, before they began so to live together as man and wife, they had been married by a minister by the name of Winters. The proof is quite clear, that these parties recognized each other as man and wife, and accepted each other as husband and wife, and that they recognized the two children, Amanda and Harriet, as their children both before and after the civil war. After the civil war, when both of the parties had become free persons, the slave marriage, previously existing between them, was ratified by them, so as to bring this case directly within the doctrine laid down in *Butler* v. *Butler, supra.*

There was introduced in evidence, upon the hearing in the court below, an act of the legislature of the State of Kentucky, approved February 14, 1866, in relation to the marriage of negroes and mulattoes. The second section of that act provides as follows: "All negroes and mulattoes who have heretofore lived and cohabited, and do now live together as husband and wife, shall be taken and held in law as legally married and the issue held as legitimate for all purposes: *Provided,* such persons shall

appear before the clerk of the county court of their then residence and declare that they have been and desire to continue living together as husband and wife, when, upon the receipt of a fee of fifty cents, the clerk shall make a record of such declaration, and for an additional fee of twenty-five cents shall furnish the parties with a certificate of said declaration. Said record or certificate shall be evidence of the existence of the marriage and the legitimacy of the issue born or to be born to said parties: *Provided*, the issue of customary marriages of negroes shall be held legitimate."

There was also introduced in evidence a certified copy of a "Certificate of C. C. Hooks, clerk of Trigg county, State of Kentucky: That on June 30, 1866, Ned Baker and Mary Baker, persons of color, came to him that day, and declared they had been living together as husband and wife, and wished to continue that relation." This document is certified by the clerk of the county court of Trigg county by a certificate, dated June 23, 1897, as being "a full and complete copy of the marriage declaration of Ned Baker and Mary Baker."

The statute of the State of Kentucky, and the certified marriage declaration, as thus introduced in evidence, show that there was a full and complete ratification by Edward and Mary Baker of their previous slave marriage. Harriet Baker was born on September 22, 1866, after the marriage was so ratified. Amanda Baker was born before the marriage declaration was made, but, as the Kentucky statute provides that the certificate shall be evidence of the legitimacy of the issue born, as well as of the issue to be born, the declaration had the effect of legitimatizing Amanda Baker, afterwards Amanda Topsico.

We are satisfied, from an examination of the proofs, that the Mary Baker, mentioned in the marriage declaration, was the same person, who is called by the witnesses Betsy, and Mary Elizabeth, as well as Mary.

Inasmuch as the marriage between Edward Baker and Betsy Baker became lawful by the proceedings above set forth, and inasmuch as Amanda became legitimatized thereby as the child of the parties, and inasmuch as Harriet was their legitimate child, born after their marriage was made legal, the title to the land in question, upon the death of Edward Baker, passed to his surviving daughter, Harriet, and to the children of his deceased daughter, Amanda, as above stated. It follows, of course, that no interest in the premises passed by the lease or the deed, executed by the widow, Mary E. Baker, to the appellant, Henry Lewis. Upon the death of Edward Baker, Mary E. Baker had no other interest in the premises than her right of dower and right of homestead. When she executed the deed on December 9, 1891, to the appellant, her dower and homestead had not been assigned to her. A surviving husband or wife cannot sell and convey the right of dower and homestead, or lease the same, to a person other than the owner of the fee, before the same has been set off and assigned. A deed by a widow under such circumstances conveys nothing, and the rights of the heirs remain precisely the same, as though she had moved from the land without attempting to make any disposition of it. (*Best* v. *Jenks,* 123 Ill. 447; *Anderson* v. *Smith,* 159 id. 93; *Union Brewing Co.* v. *Meier,* 163 id. 424).

Several other objections than those here mentioned are suggested in the assignment of errors, made by counsel for appellant; but, as these points are not discussed or urged upon our attention in the briefs of counsel for appellant, we decline to consider them. Alleged errors, not stated or suggested in appellant's brief, are waived, and will not be considered by the court, even though they be assigned on the record. (*Gaffner* v. *People,* 161 Ill. 21; *Rhodes* v. *Rhodes,* 172 id. 187).

For the reasons above stated, the decree of the circuit court is affirmed.                         *Decree affirmed.*