HENRY LEWIS

*v.*

ELI TOPSICO *et al.*

·*Opinion filed February 18, 1903.*

1. BILLS OF REVIEW—*what essential to relief on a bill of review.* To entitle complainant to relief on a bill of review for newly discovered evidence, it is essential that the evidence be discovered after the original decree was entered; that it could not have been discovered before by the exercise of reasonable diligence; that it be material and of such a character as will produce a different result on the merits on another trial, and that it be not merely of a cumulative or impeaching character.

2. SAME—*bill of review must fully inform defendant of issues tendered.* A bill of review, grounded upon newly discovered evidence, should so clearly state the findings of the original decree that are put in controversy by the new evidence as to fully inform the defendant of the character of the issues tendered.

3. SAME—*bill of review must be accompanied by proper testimony applicable to its allegations.* A bill of review for newly discovered evidence must be accompanied by proper testimony applicable to its allegations, so that the court can see, from the allegations and the testimony, that the result will be different upon another trial.

4. SAME—*allegations of bill and the proffered testimony must be considered together.* The allegations of a bill of review for newly discovered evidence and the testimony proffered with the bill must be considered together in determining the sufficiency of the complainant's showing of his right to the relief sought, and it is just as important that the proffered testimony be specific and cover the allegations of the bill, as it is that the allegations be specific and state the errors committed by the court because of the absence of such proffered testimony.

5. SAME—*it must appear that the new evidence could not have been discovered by reasonable diligence.* It is an absolute essential of a bill of review for newly discovered evidence that it appear from the bill, or the affidavit thereto, that the evidence was in fact newly discovered, and that it could not, by the exercise of reasonable diligence, have been discovered and used before the publication of the original decree.

6. SAME—*mere allegation of diligence in a bill of review is insufficient.* A bill of review for newly discovered evidence must state facts and circumstances from which the court can see, independently of the mere statement of the fact, that complainant has used reasonable diligence, and that, notwithstanding such diligence, he was

unable to procure the evidence in time to use it at the original hearing or before publication of the decree.

7. SAME—*what facts show a failure to use diligence.* Failure to use diligence in procuring alleged newly discovered evidence is shown where the original suit was pending six years, and the defendant, who is complainant in the bill of review, had three years after filing his answer to procure the evidence, all of which, with the exception of one affidavit, was obtained within forty miles of the trial county, there being no showing that he ever wrote, went or sent any one to that place to seek evidence for the original suit.

8. SAME—*when affidavits to bill of review and petition therefor are insufficient.* Affidavits to a bill of review and the petition therefor are insufficient where they show that the complainant was unwilling to swear unequivocally to the truth of the matters set forth.

WRIT OF ERROR to the Circuit Court of Pope county; the Hon. A. K. VICKERS, Judge, presiding.

SAWYER & EVANS, for plaintiff in error.

C. L. V. MULKEY, for defendants in error.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is a writ of error to the circuit court of Pope county to reverse a decree of that court dismissing a bill of review filed in that court by plaintiff in error, on demurrer by defendants in error. The bill was brought to review a decree for partition entered in that court on May 11, 1898, in the case of *King* v. *Lewis,* which case was afterwards appealed to this court and the original decree affirmed. (*Lewis* v. *King,* 180 Ill. 259.) The original decree sought to be reviewed by this bill was entered upon a bill, and certain amendments thereto, filed in said court on the 17th day of March, 1892, and was there pending until final decree in May, 1898. The material findings of this decree were as follows: "That one Edward Baker, sometimes called Ned Baker, departed this life intestate on the 18th day of July, 1891; that at the time of his death said Baker owned in fee simple and occupied as a homestead the following described real estate, to-wit, (describing land); that Edward Baker left him surviving

a widow, Mary E. Baker, and the following named person as his only heirs-at-law: Harriet Baker Wagner, (an only surviving child,) Mary J. King, Eliza DeGraftenreid and Eli Topsico, (his only surviving grandchildren,) the three last named persons being the only surviving children of one Amanda Topsico, a deceased child of said Edward Baker; that by the death of said Edward Baker the above named heirs-at-law became seized in fee, as tenants in common by descent from the said Edward Baker, of the described premises, * * * subject, however, to the rights of dower of the said Mary Baker, the widow of the said Edward Baker; * * * that upon the death of the said Edward Baker, his widow, Mary E. Baker, before her dower in said premises had ever been assigned to her and before her homestead therein had ever been allotted or set off to her, * * * executed in favor of the defendant, Henry Lewis, a lease of, in and to said premises for a term of fifty-nine years, and also, on the same day, a warranty deed to the same in favor of the said Henry Lewis; that thereupon the said Mary E. Baker abondoned said premises; * * * that after the commencement of this suit * * * the said Eliza DeGraftenreid * * * departed this life intestate, leaving as her only heirs-at-law her husband, Thomas De-Graftenreid, her sister, Mary J. King, her brother, Eli Topsico, and her father, Rudolph Topsico. * * * The court further finds, from the evidence, that the women, Amanda Topsico, deceased, and Harriet Baker Wagner, are legitimate children of Edward Baker, deceased, born of Mary Elizabeth (or Betsy) Gray; that the woman called Betsy by some of the witnesses, and Mary Elizabeth by others, is the same person, and that she was legally married to the said Edward Baker under the Kentucky statute read in evidence by the complainant in the case, and that such marriage legitimatized both the children of Amanda and the children of Harriet, who are found by the court, under the evidence, to be the only legitimate

children born and begotten by the said Edward Baker; * * * that the fifty-nine-year lease and the warranty deed * * * to the defendant Henry Lewis * * * conveyed nothing to him; * * * that her deed was a nullity; * * * that the said Henry Lewis has no title or interest in or to the premises in controversy."

To the original bill Lewis, the plaintiff in error, filed his answer June 1, 1895, and further amendments having been made to the bill, the plaintiff in error filed a further answer on October 21, 1895. In both of these answers he explicitly denied that Harriet Wagner, Eli Topsico, Mary King, Thomas DeGraftenreid and Rudolph Topsico were the heirs of Edward Baker, and denied that they were the owners of the land in question. As seen by the above decree, these issues were found against the contention of plaintiff in error, and he prosecuted his appeal to this court, insisting that the decree should be reversed upon the facts, but the court, after a full discussion of the case, affirmed the decree of the lower court.

This bill of review was filed October 13, 1899, without notice and upon a bill that was not sworn to. At the January term, 1900, defendants in error entered a special appearance for that purpose and made a motion to strike the bill from the files for the various grounds stated, among them being, that the plaintiff in error had not complied with the original decree, in that he had not paid the costs in the original suit and that the bill was not sworn to. Upon a cross-motion plaintiff in error was allowed to swear to the bill and pay the costs, and without disposing of the motion to strike from the files the cause was continued. Without this motion finally being disposed of, defendants in error, at the May term, 1900, filed their demurrer to the bill, which, at the October term, 1901, was sustained and an order entered dismissing the bill, to reverse which this writ is prosecuted.

The bill in the present case is predicated upon alleged newly discovered evidence. The principal fact which is

involved in the original decree which it is sought to review, was whether Amanda Topsico, deceased, and Harriet Baker Wagner, were legitimate children of Edward Baker, the deceased owner of the land in controversy. Upon that question the findings of the original decree were: "That the women, Amanda Topsico, deceased, and Harriet Baker Wagner, are legitimate children of Edward Baker, deceased, born of Mary Elizabeth (or Betsy) Gray; that the woman called Betsy by some of the witnesses, and Mary Elizabeth by others, is the same person, and that she was legally married to the said Edward Baker under the Kentucky statute read in evidence by the complainant in the case, and that such marriage legitimatized both the children of Amanda and the children of Harriet, who are found by the court, under the evidence, to be the only legitimate children born and begotten by the said Edward Baker."

The allegations of the present bill on these propositions are as follows: "That since the rendition of said decree petitioner has discovered new matter and evidence of consequence in said cause, particularly that Amanda Topsico and Harriet Baker Wagner were not born of her body, as the legitimate children of Edward Baker and Mary Elizabeth Gray, (or Betsy Gray,) and that said Amanda and Harriet were not born of her body as the legitimate children of Edward Baker; and also that the said Edward Baker and Mary Elizabeth (sometimes called Betsy) were never in fact married or made a marriage declaration under the Kentucky statute, as by the said decree declared and found; that the marriage declaration purporting to be that of Mary Baker and Ned Baker, offered in evidence, does not mean and does not refer to Edward Baker, deceased, who died in Pope county, July 18, 1891, and who was the owner of the land in question; that it does not refer to Mary Elizabeth (or Betsy) Gray, as is supposed, but refers to other and different persons, to-wit, Ned Baker, of Trigg county, Kentucky, who died

in that county and State in November, 1896, and Mary Baker, wife of Ned Baker, who died in Trigg county, on July 4, 1894."

The petitioner makes the affidavit of Alice Gardner, formerly Alice Baker, daughter of the last mentioned Ned Baker and Mary Baker, a part of this petition, and marks it "Exhibit A, No. 2." The petitioner also makes the affidavit of George Richardson a part of this petition, and marks it "Exhibit B, No. 5," and then avers: "That Amanda Topsico was the daughter of Elizabeth Hillman, as appears from a marriage bond given by Rudolph Topsico at the time of their intermarriage in Lyon county, Kentucky, February 20, 1867, a certified record whereof is hereto attached and made 'Exhibit B;' that Harriet Baker Wagner was not the person supposed by the decree, but by the record evidence of her marriage in Lyon county, Kentucky, (certified copies of which are hereto attached and made a part hereof,) she was Harriet Gray, and was the daughter of Richard Hillman and Elizabeth Hillman, and that the Elizabeth Hillman above mentioned is not the Mary Elizabeth or Betsy Gray (or Mary Baker) named in the decree as the former wife of Edward Baker that died in Pope county, Illinois, but she in fact married Richard Hillman in Lyon county, Kentucky, the 26th day of December, 1866; her marriage declaration is made a part hereof; and that said Harriet intermarried with one John Sharon, May 1, 1880, as the record made a part hereof will show."

The exhibits attached to the bill of review and showing the supposed newly discovered evidence are:

"Exhibit A, No. 2;" affidavit of Alice Gardner, made in August, 1899, who gives her age as forty-two years and states that she is the daughter of Ned and Mary Baker, who made their marriage declaration at Cadiz, in Trigg county, Kentucky, on the 30th day of June, 1866; that she was present at said marriage and well remembers the same; that said Ned and Mary lived near her, and were

at her house often and frequently talked about their marriage; that her mother, Mary Baker, died July 4, 1894, and her father, Ned Baker, died in November, 1896; that both died in Trigg county, Kentucky, and left no children but the affiant surviving them.

"Exhibit B, No. 5;" affidavit of George L. Richardson; age, sixty-two years; residence, Trigg county, Kentucky; that from early boyhood he was well acquainted with Ned and Mary Baker, and that Alice Baker was the only child born to them; that Mary died in 1894 and Ned in 1896, both in Trigg county, Kentucky; that they are the same Ned and Mary Baker who made their marriage declaration at Cadiz, Trigg county, Kentucky, June 30, 1866; that this Ned Baker was a slave of Mr. Boach, and that Peter Baker bought him of Boach, and he was afterwards called Ned Baker; that Mary Baker, the wife of that Ned Baker, belonged to Peter Baker, her husband's master, all her life, and he knows that said Ned and Mary Baker never belonged to any other persons than Boach and Baker; that he also knew Ned Baker who was owned by Daniel Hillman; that Hillman's Ned Baker had no wife at the close of the war, in 1865, but that some time afterwards Ned Baker, who was never the husband of Mary Baker, took Dinah Fentress for his wife, and she lived with him until her death; that the last named Ned Baker then went to Illinois, and that affiant does not know whether he had any children, but that if he had they were not the fruits or issue of any marriage; that affiant knew Richard Hillman, commonly called Dick Virginia, and also knew his wife, Elizabeth Hillman, who was commonly called Betsy Gray, and knew their children, Dick, Bob, Amanda Gray, Dinah Gray and Bill Gray, whose proper names were Hillman; that these children were born before freedom, and after freedom, Lethe, Harriet, George, Maggie and Ed were born; that affiant was present at the intermarriage of Richard Hillman and Elizabeth Hillman on the 26th day of December, 1866, and that

they were the father and mother of the children above named, and that Richard Hillman was commonly known as Dick Virginia, so as to designate him from another of Hillman's servants, and Elizabeth Hillman was called Betsy Gray, as she was formerly a slave of Mr. Gray.

"Exhibit A" is a certified copy of the declaration of marriage made in the county court of Lyon county, Kentucky, December 26, 1866, signed by Richard Hillman and Elizabeth Hillman by their mark, and attested by the clerk, in which they say "they" have lived together as husband and wife for the past twenty years and still desire to continue living together as such, and make this declaration that the same may be made matter of record.

"Exhibit B" is a marriage bond given by Rudolph Topsico, with Richard Hillman as surety, on February 20, 1867, in Lyon county, Kentucky, conditioned "that whereas marriage is intended to be solemnized between the above bounden Rudolph Topsico and Amanda Hillman, both of color, now if there is no lawful cause to obstruct said marriage this bond shall be void," etc.

"Exhibit C" is a marriage bond and certificate of the marriage, given in Lyon county, Kentucky, of John Sharon and Harriet Gray, dated May 1, 1880. On the marriage certificate the bride states her name to be Harriet Gray, her age to be twenty years, her birthplace as Kentucky, the birthplace of her father as Virginia and the birthplace of her mother as Kentucky.

"Exhibit No. 1" is the affidavit of Moses Sharon, who states that Richard Hillman and Elizabeth Hillman, who were commonly known as Dick Virginia and Betsy Gray, were married some time in the latter part of 1886, and that Dick Virginia had the name of Virginia added to his name to designate him from another of Mr. Hillman's servants, and Betsy, called Betsy Gray, because she belonged to Mr. Gray; that affiant lived in adjoining rooms with them; that their children were Amanda, Dick, Bob, Sidney and Bill, who were born under slave marriage,

and that after their marriage at Eddyville, Kentucky, Harriet, Lethe, George, Ed and others, who died in infancy, were born to Richard Hillman and Elizabeth Hillman; that Rudolph Topsico married Amanda, who was one of the children above named; that John Sharon, son of affiant, married Harriet; that for twenty-five years before the war Richard and Elizabeth Hillman regarded each other as man and wife, and at no time either lived with any other man or woman as husband and wife; that after the war they lived together until the death of Richard Hillman; that Elizabeth never lived with any other man as her husband; that both are now dead; that he was a partner of Hillman's after the war and was a fellow-servant with him during slavery; that he lived in the same house part of the time, and his age is sixty-seven years.

"Exhibit 4" is the affidavit of Malissa Henderson, who says she was acquainted with Richard Hillman and Elizabeth Hillman, who were man and wife, and who were married about December, 1866; that they were mostly known as Dick Virginia and Betsy Gray; that when affiant first knew them they had as children Amanda, Dick, Bob, Sidney and Bill, and after their marriage there were born to them Harriet, Lethe, George, Maggie and Ed; that affiant was a midwife, or assisted at the birth of each of these children born after the marriage, in 1866; that Richard and Elizabeth had been living together before their marriage, in 1866, under a slave marriage; that Elizabeth was known by no other name than Elizabeth or Betsy, and she was never known as Mary; that from 1866 she never lived with or claimed any other man as her husband but Dick Virginia or Richard Hillman; that Amanda, the daughter of Elizabeth, married Rudolph Topsico.

"Exhibit 5" is the affidavit of Gilliam Henderson; age, sixty years; resident of Trigg county, Kentucky; became acquainted with Richard Hillman, and Elizabeth Hill-

man, his wife, in May, 1866; they were commonly known as Dick Virginia and Betsy Gray; knew their children, Amanda, Bob, Dick and Sidney; they were born when affiant first knew them; affiant was present when they made their marriage declaration, in December, 1866.

To entitle plaintiff in error to the relief sought in this bill of review it is essential that (1) the matter was discovered after the decree was rendered; (2) it could not have been discovered before by the exercise of reasonable diligence; (3) it is material, and such as, if true, should produce on another trial of the issue a different result on the merits; and (4) it is not merely cumulative. (*Elzas* v. *Elzas*, 183 Ill. 132; *Griggs* v. *Gear*, 3 Gilm. 2; *Walker* v. *Douglas*, 89 id. 425; *Schaefer* v. *Wunderle*, 154 id. 577; *Boyden* v. *Reed*, 55 id. 458.) To these requirements may be added the further one that the new testimony shall not be merely of an impeaching character, and that the bill shall so clearly and with sufficient certainty state the matters found in the original decree that are put in controversy by the proposed new evidence, that the defendant may be well and fully informed as to the character of the issues tendered. *Cheney* v. *Patton*, 134 Ill. 422; *Primmer* v. *Patten & Co.* 32 id. 528.

The alleged newly discovered evidence, in the bill in question, relates to three subject matters or may be classified under three general heads:

(1) It is attempted to show that the Ned Baker who was the owner of the land in question and who was a slave during the war, and one, at least, of whose children was the issue of a slave marriage, never made a marriage declaration with Betsy Gray, or Mary Elizabeth Gray, his slave wife, by which such marriage became legalized under the statutes of Kentucky and by which said child or children would be legitimatized, but it is insisted, on the contrary, and certain affidavits are presented for the purpose of showing, that a marriage declaration that is said to have been made June 30, 1866, at Cadiz, in Trigg

county, Kentucky, between a certain Ned Baker and Mary Baker, and which, it is claimed, was relied on at the time of the trial of the original cause to legitimatize the claimants of this land under the original bill, was in fact a marriage between persons other than the owner of the land and his alleged wife.

(2) It is insisted that the Betsy Gray who the decree finds was the wife of Edward Baker was in fact the wife of one Richard Hillman, and that their marriage was legalized by a declaration of marriage made at Eddyville, in Lyon county, Kentucky, December 26, 1866, and that said Betsy Gray was never the wife, by slave marriage or any other form of marriage, of the said Edward Baker, the owner of said land.

(3) That the children, Harriet Baker Wagner and Amanda Topsico, who were the persons claiming and through whom was claimed the title to this land, as children and heirs-at-law of Edward Baker, were not his children by Betsy Gray or by any other person, but were in fact the children of said Richard Hillman and a certain Betsy Gray, who was his wife under the marriage declaration mentioned above.

In reference to the marriage of Edward Baker, the defendant's intestate, the original decree finds "that the woman called Betsy by some of the witnesses, and Mary Elizabeth by others, is the same person, and that she was legally married to the said Edward Baker under the Kentucky statute read in evidence by complainant." It will be observed that in this decree no statute is specified, otherwise than by the general term "Kentucky statute." The character of the marriage is not stated,— whether by a declaration of marriage, or one performed by a minister, or under some custom obtaining among slaves or other persons resident in the State of Kentucky. Nor is the time or place of the marriage stated. Plaintiff in error, in his bill, to raise an issue as to this marriage, states "that the marriage declaration purport-

ing to be that of Mary Baker and Ned Baker, offered in
evidence, does not mean and does not refer to Edward
Baker, deceased, who died in Pope county in July, 1891,
and who was the owner of the land in question; that
it does not refer to Mary Elizabeth (or Betsy) Gray, as
is supposed, but refers to other and different persons,
to-wit, Ned Baker, of Trigg county, Kentucky, who died
in that county and State in November, 1896, and Mary
Baker, wife of Ned Baker, who died in Trigg county,
Kentucky, July 4, 1894."

The above are all the allegations the bill contains
relative to this point in issue. Nowhere in the bill is
any declaration of marriage, that was introduced in evi-
dence and considered in entering the original decree, set
out, either in substance or by copy, or by reference to
its date, time or place; nor is any statute of Kentucky
set out, either in words or by apt reference, by any aver-
ment, to which it is said the portion of the decree above
quoted refers, or which was relied upon in the original
hearing or will be relied upon under the bill of review;
nor is any declaration of marriage between the said Ned
Baker and Mary Baker, who died in Kentucky and who
were not in any manner related to the ownership of this
land, set out, either by proper averment or copy, or in
any other manner, save by mere reference found in the
affidavits of Alice Gardner, "Exhibit A," and George L.
Richardson, "Exhibit B, No. 5," in which affidavits it is
merely stated that these last named parties made a mar-
riage declaration on June 30, 1866, at Eddyville, Ken-
tucky, and that they both died in Kentucky at certain
dates mentioned. The affiants do not state that they
ever even knew the Edward Baker who owned this land.
Nor is there a specific averment in the present bill that
the legal marriage found by the original decree to have
been celebrated between Edward Baker and Mary Eliza-
beth (or Betsy) Gray under the Kentucky statute was by
a marriage declaration, but it is stated as a mere recital,

from which the court is asked or expected to infer that such was the character of the marriage. Alice Gardner is the only witness who states she was present at the marriage, by declaration, of her father, Ned, and Mary Baker, on June 30, 1866. At that time she was nine years old. She signs her affidavit by mark, and in no manner mentions the Edward Baker who owned the Illinois land. Affiant Richardson says Ned and Mary Baker, the father and mother of Alice, were married June 30, 1866; but this is a mere recital, and he does not claim to have been present and does not state his means of knowledge.

On the second proposition, that Mary Elizabeth (or Betsy) Gray was never the wife of Edward Baker, who owned this land, but was the wife of Richard Hillman, the allegations of the bill are, that "the said Edward Baker and Mary Elizabeth (sometimes called Betsy) were never in fact married or made a marriage declaration under the Kentucky statute." Then, after making certain allegations as to Amanda Topsico and Harriet Baker Wagner being the children of Richard and Elizabeth Hillman, the bill further alleges "that the Elizabeth Hillman above mentioned is not the Mary Elizabeth and Betsy Gray (or Mary Baker) named in the decree as the former wife of Edward Baker that died in Pope county, Illinois, but she in fact married Richard Hillman in Lyon county, Kentucky, the 26th day of December, 1866; her marriage declaration is made a part hereof." In support of these allegations a copy of the marriage declaration between Elizabeth Hillman and Richard, of date December 26, 1866, and attested by the clerk of Lyon county, Kentucky, is attached, and the affidavit ("Exhibit B, No. 5,") of George L. Richardson that he knew Richard Hillman, commonly called Dick Virginia, and his wife, Elizabeth Hillman, and their children, (naming them,) and that Richard Hillman was commonly known as Dick Virginia, and Elizabeth Hillman was called Betsy Gray. Also the affidavit of Moses Sharon that he knew Dick

Virginia, who was Richard Hillman, and Elizabeth Hillman, who was called Betsy Gray, and who were servants of Mr. Hillman; that they lived together twenty-five years before the war, regarded each other as man and wife, and at no time lived with any other man or woman as husband and wife, and after the war lived together until the death of Richard Hillman; that both are dead. And the affidavit of Malissa Henderson that she knew Richard Hillman and Elizabeth Hillman, who were man and wife and who were married about December, 1866; that they were mostly known as Dick Virginia and Betsy Gray; that they had a number of children before their marriage, among them, Amanda, and a number of children after their marriage, and among them, Harriet, and that she assisted at the birth of the children after the marriage; that Elizabeth was known by no other name than Elizabeth (or Betsy) Gray, and was never known by the name of Mary, and never lived with any other man as her husband than Richard Hillman. And Gilliam Henderson's affidavit that he became acquainted with Richard and Elizabeth Hillman in 1866, and which gives the names of their children at that time, among them, Amanda, who, he says, were born when he first knew them, and that he was present when they made their marriage declaration, in December, 1866. None of these witnesses, in their affidavits, mentioned Edward Baker, who owned the land in controversy, with any certainty at all. The only one mentioning him is George Richardson, who states that he knew Edward Baker, who came to Illinois and was the former slave of Richard Hillman. None of these affiants identify Elizabeth (or Betsy) Hillman as the same woman who it is claimed was the wife of Edward Baker, deceased, of Illinois, nor do they refer to him in any manner in connection with her, but these affidavits relate wholly, with the exception above stated, to her marriage to and relation with Richard Hillman, or Dick Virginia. It may be well doubted, however stated,

that these affidavits relate to the same Elizabeth (or Betsy) Gray that was claimed to have been the wife of Edward Baker, if the testimony or affidavits offered are of such a character as could be said to be conclusive of the proposition. Every affidavit that is made in support of this motion, except that of George L. Richardson, is signed by the mark of the affiants, and with no apparent effort, in any of them, to clearly identify the person of Betsy Gray, of whom they speak as the Betsy Gray claimed to be the wife of Edward Baker, through whom the land is claimed.

The last proposition that they seek to cover is, that Amanda Topsico and Harriet Baker Wagner were the children of this Richard Hillman and Betsy Gray, and not the children of Edward Baker. The testimony proposed by the affidavits accompanying the bill has all seemed to purposely divide the children of Richard Hillman and his wife into two groups: those born during and of the slave marriage, and those born after the declaration of marriage of the Hillmans, in December, 1866. Upon this point Richardson says he "knew their children, Dick, Bob, Amanda Gray, Dinah Gray and Bill Gray, whose proper names were Hillman; that these children were born before freedom, and after freedom, Lethe, Harriet, George, Maggie and Ed were born." Moses Sharon says that their children were Amanda, Dick, Bob, Sidney and Bill, who were born under slave marriage, and that after their marriage at Eddyville, Kentucky, Harriet, Lethe, George, Ed and others were born. Malissa Henderson says that when she became acquainted with Richard Hillman and his wife, Elizabeth, they had as children Amanda, Dick, Bob, Sidney and Bill, and that after their marriage, which she says was in December, 1866, Harriet, Lethe, George, Maggie and Ed were born, and that she was a midwife and assisted in their birth. Gilliam Henderson says that he became acquainted with Richard Hillman and Mary Elizabeth in May, 1866, and that their

children then were Amanda, Bob, Dick and Sidney. No
witness in any affidavit mentions Harriet Baker Wagner,
but she is mentioned as Harriet Gray, and as such affi-
ants claim she was married to John Sharon, the son of
Moses Sharon, one of the affiants. The marriage bond
and certificate of marriage of John Sharon and Harriet
Gray are attached as "Exhibit C." She says that this
marriage was celebrated on May 1, 1880, and the name
is given as Harriet Gray instead of Harriet Hillman, and
the witnesses say she is the Harriet Hillman who was
born after the marriage of Richard Hillman and Eliza-
beth Hillman. The marriage certificate itself is that of
Harriet Gray, and on the back of the certificate certain
items of her history are set out, and among them her age,
which is placed at twenty years.

It is perfectly apparent upon an inspection of these
affidavits and this marriage certificate, which is supposed
to be a verity, that there is something wrong with this
evidence in regard to this Harriet. If she was born after
1866, and after Richard Hillman, who they claim was
her father, was legally married to her mother, it is not
easily understood why she should go by the name of Gray
instead of Hillman, and it is utterly beyond explanation
that she could be born after 1866, and married in 1880,
and be twenty years old at the time of her marriage. The
reason of the situation tends much more strongly to show
that she was born when her mother still went by the name
of Betsy Gray, and when the identity of her father was
not sufficiently known that she could take his name, and
if the record of her marriage be true, it is certain that she
was born before this supposed marriage of her mother
and Richard Hillman. The uniform statement in all
these affidavits is that she was born after this marriage,
Henderson's affidavit being the only one that omits that
express statement, the statement in his being that she
was born after freedom. Whether he referred to the time
that the war closed and the negroes generally went their

own way, or whether he referred to the time of the emancipation proclamation taking effect, may be uncertain, but in either event, if she was twenty years old in 1880 it is clear that she was born two years before either one of the happenings that are mentioned in these affidavits as having preceded her birth. And in this connection it is a strange coincidence that Amanda, whom these people speak of in their affidavits, and who was clearly born some time in the fifties and during the slave marriage, if any, should in 1867 be married as Amanda Hillman, and that Harriet, who is claimed to have been born in lawful wedlock as issue of the Hillmans, should in 1880 be married as Harriet Gray.

No witness in any affidavit refers in any manner to Harriet Baker Wagner. She is not named in any of them. They speak of Harriet Gray, Harriet Hillman and Harriet Sharon, but do not identify the latter as the person who was found by the decree in the original case to be Harriet Baker Wagner, and to be the daughter and heir of Edward Baker, the owner of the land. And there is a like absence of any identification of the Amanda Gray, or Amanda Hillman, who is spoken of by the witnesses as having married a certain Rudolph Topsico, or any declaration or statement of any witness in any affidavit that she was the Amanda Topsico who it was claimed and who the decree in the original case found was the daughter of said Edward Baker. It was not sufficient that the bill should contain the necessary allegation. A bill of review must be accompanied by proper testimony applicable to the allegation, and the court must be able to see and say, from the allegations of the bill and the proffered testimony, that if the cause should be tried again the result would be different. It was just as important that the plaintiff in error should have his testimony specific and cover the allegations of the bill, as it was that the allegations should be specific and state the errors committed by the court because of the absence of

proper testimony, which he proffered with his bill. They must be taken together to make the plaintiff's showing of his right to the relief sought, and when this bill is carefully examined and the affidavits and records that are offered in evidence applied to it, it seems to us that the court could well say that there was not such a showing made by the plaintiff in error as that the court could see, if the case were opened up and the former decree reviewed, that it was highly probable that a different result would be reached.

'There is still another very important phase of this bill in which the plaintiff in error wholly failed to meet the requirements of the law. It is an absolute requisite that it shall appear from the bill, or an affidavit accompanying the same, that the newly discovered evidence was in fact newly discovered, and that it was such evidence that could not, by the exercise of reasonable diligence, have been discovered and used before the publication of the original decree. And upon this question of diligence a mere declaration or allegation of the plaintiff in error, in his bill, that the same could not have been discovered by the exercise of reasonable diligence is not sufficient, but he must state facts and circumstances from which the court may see that he has exercised reasonable diligence, and that, notwithstanding the exercise of such diligence, he was unable to procure and produce to the court the evidence upon which he relies for a review, in time to have been of use at the original hearing or before publication of the original decree. (*Schaefer* v. *Wunderle,* 154 id. 577; *Elzas* v. *Elzas,* 183 id. 132; *Simpson* v. *Watts,* 6 Rich. Eq. 364; 62 Am. Dec. 392; *Adler* v. *VanKirk Land and Construction Co.* 114 Ala. 551; 62 Am. St. Rep. 133.) In *Elzas* v. *Elzas, supra,* it is said (p. 134): "The newly discovered evidence must be distinctly stated and the affidavits of witnesses must be filed in support of the averment. If the petitioner has been negligent in discovering and producing the evidence at the former hearing his negligence

will bar any relief. He must show that the evidence was such that with the use of reasonable diligence he could not have known of it before the hearing, and the general rule is, that evidence which tends simply to impeach testimony given on the hearing will not be sufficient to sustain a bill of review." Lord Eldon says: "The question always is, not what the petitioner knew, but what, using reasonable diligence, he might have known." *Simpson* v. *Watts, supra.*

In the case at bar the allegation on this subject is as follows: "That your petitioner has learned newly discovered evidence, and of the existence thereof, about the 10th day of August, A. D. 1899." In the bill the allegation is: "Which new matter your orator did not know, and could not by reasonable diligence have got so as to make use thereof in said cause previous to and at the hearing and the presenting of said decree, and that your orator first learned of the existence of said newly discovered evidence about the 10th day of August, 1899, and your orator is advised that the said new matter ought to reverse said decree." There is no other allegation, either in the petition or the bill, with reference to the diligence used or the discovery of this alleged new evidence. The bill was filed without being sworn to at all. The affidavit to the petition was, "that the foregoing petition is true in substance and in fact, as proved from evidence and records filed herewith," and the affidavit to the bill is, "that the same is true in substance and in fact, to the best of his knowledge, information and belief," so that in neither bill nor affidavit is there any sufficient or definite statement as to the diligence used, when the course of the original suit is taken into consideration. The original bill was filed May 17, 1892, and the decree was entered May 11, 1898, so that plaintiff in error had practically six years in which to seek and prepare his testimony for the trial. He filed his answer May 15, 1895, and then put in issue the heirship of the children,

Harriet Baker Wagner and Amanda Topsico, and he had practically three years from the time he had offered that issue to the time of the decree to seek and discover evidence in support of it. He lived in Pope county, and all the testimony that he has furnished here, except the affidavit of Alice Gardner, was obtained in Lyon county, Kentucky, which is just across the river and not more than forty miles from Pope county. Neither in the affidavits nor in the bill does he allege that he ever wrote a letter or went to either of these places to seek testimony, or sent any one. The same attorney who represented him in the original suit filed the present bill, and no affidavit from him or statement of any kind is shown as to the diligence used on his part. In *Yates* v. *Monroe,* 13 Ill. 212, in considering a bill of review, this court declared that a court of chancery will reject an application for a new trial on the ground of newly discovered evidence for the same reason which would control a court of law. In *Bowen* v. *Rutherford,* 60 Ill. 41, which was an application for a new trial upon newly discovered evidence, the court said (p. 44): "This suit was pending in court nearly four years. Mattoon, the place of business of the makers of the note sued on, was easily accessible from Chicago, and yet, during all this time, the only effort for the procurement of testimony was the writing of a letter to an attorney in Mattoon, who made no reply. Another letter was written after the lapse of some time, but no information was elicited. Reasonable diligence required more active measures." In *Champion* v. *Ulmer,* 70 Ill. 322, upon a motion for a new trial for newly discovered evidence, we said, in speaking of the affidavit for new trial, which contained the allegation "that the facts hereinbefore recited have come to the knowledge of this affiant since the trial of said case had at this term," it is not sufficient,—"the party must negative, in his affidavit, every circumstance from which negligence may be inferred." To the same effect is *Wright* v. *Gould,* 73 Ill. 56.

The affidavits to the bill and petition were both insufficient, and clearly show that the plaintiff in error was unwilling to unequivocally swear to the truth of either of them. *Schaefer* v. *Wunderle*, 154 Ill. 577; *Board of Trade* v. *Riordan*, 94 Ill. App. 298.

After a full consideration and review of this record we cannot say that the court erred in sustaining the demurrer, and its decree is accordingly affirmed.

*Decree affirmed.*