GEORGE HOLLIDAY *et al.* Appellees, *vs.* REASON SHEPHERD
*et al.* Appellants.

*Opinion filed October 27, 1915.*

1. WILLS—*when record showing appointment of conservator is
admissible.* As bearing on the issue of mental capacity in a will
contest case, where the evidence shows the testator had always
been weak-minded, the record of the county court showing the ap-
pointment of a conservator for the testator about a month before
the will was made, upon the verdict of a jury finding him insane,
is admissible, not as conclusive of the question of insanity, but to
be considered with the other evidence. (*Entwistle* v. *Meikle,* 180
Ill. 9, and *In re Weedman's Estate,* 254 id. 504, distinguished.)

2. SAME—*when declaration by testator after execution of will
is admissible.* Testimony by one of the witnesses to the will in
contest that one reason why he thought the testator, who was a
weak-minded man, did not understand what he was about when he
made the will, was that the testator, a few days after the will was
made, stated to him that he had disposed of his property by the
will in a certain way detailed by him which was not in accordance
with the will, is admissible as bearing upon the question of testa-
mentary capacity.

3. APPEALS AND ERRORS—*what questions will not be considered
on appeal.* Questions which are raised in the reply brief for the
first time will not be considered by the Supreme Court, nor will
errors which are assigned but not argued.

APPEAL from the Circuit Court of Vermilion county;
the Hon. E. R. E. KIMBROUGH, Judge, presiding.

O. M. JONES, GEORGE R. TILTON, and CHARLES G. TAY-
LOR, (WILLIAM R. LAWRENCE, of counsel,) for appellants.

W. B. WILSON, JOSEPH A. JENKINS, KEESLAR & GUNN,
and ACTON & ACTON, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of
Vermilion county setting aside the will of Jason H. Mc-
Kinney, deceased. The bill alleged that the instrument in
question was not signed by the deceased, that he was not

of sound mind and memory at the time of its execution, and that such execution was obtained by fraud and undue influence of certain of the beneficiaries. On a trial of the issues raised by the pleadings the verdict of the jury stated that the writing in question was not the last will and testament of the deceased, and the decree was entered accordingly.

Jason H. McKinney died March 20, 1912, leaving as his only heirs a half-brother, Albert McKinney, one of the appellees herein, and Malinda Nichols, a half-sister, to each of whom he left $500, and George Holliday and Mary Stenger, children of a deceased sister. All of his property except the said two $500 legacies, consisting mainly of an eighty-acre farm, was divided by the will equally between Reason Shepherd, a cousin, and Josephine Lawrence, a distant relative, who was the wife of the attorney who drew the will. The instrument was executed on May 6, 1893. McKinney had lived all his life in Vermilion county. There is no positive testimony in the record as to his age, but we gather from what was stated that he was nearly seventy years old at the time of his death.

The principal question urged by appellants is that the evidence does not sustain the verdict and decree. From the testimony there is little question that McKinney was not well developed mentally. Some of the witnesses testified that he was feeble-minded, and one or two stated they would consider him an idiot or an imbecile. The great weight of the testimony of all the witnesses is to the effect that he was weak mentally. Testimony of more than sixty witnesses was heard by the jury,—about twenty-five for appellants and about forty for appellees. Four doctors, a number of business men, farmers and others who knew the deceased at the time of the making of the will and previous thereto, testified for the appellants. About twenty of them testified they believed he knew his friends, what property he had and to whom he wished it to go,

Many of them admitted he was of weak mental capacity, using different language, as, "not bright," "not normal," "peculiar," "had an undeveloped mind," "was like a child," was considered "a joke" by those who knew him. Practically all the witnesses for appellees, many of whom had been intimately acquainted with him a long time, after stating the facts upon which they based their testimony, gave the opinion that he was not of sound mind, some saying he did not have sufficient mind to reason intelligently on any subject. Many witnesses stated that he was better at some times than at others. For years before he executed this will he lived on the farm in question with his mother. She died shortly before the will was executed. The great weight of the testimony is to the effect that when living with his mother she took charge of the farm, and while he helped her, went on errands and did small jobs, he rarely acted independently of her directions. While some of the witnesses for appellants say he was a good judge of stock and talked about horses and trading a good deal, no one ever took such talk seriously. He did little trading of any kind. The most he ever bought at the store was candy, tobacco, or something of like character. The testimony, we think, is uncontradicted that he often talked of getting married the same as he talked of making trades, buying and selling live stock, there being no real foundation for talk of this kind. Some of the witnesses stated that he was easily excited, would talk of doing certain things, but that no one ever took him seriously in regard to any of these matters. A tenant of his mother testified that McKinney would frequently call people his friends and other persons his enemies, when, as a matter of fact, the one he would call an enemy was a friend and the one he called a friend was not friendly to him. One witness testified he had given testator a dollar bill and the latter thought it was a ten-dollar bill. The testimony is also to the effect that he was a great eater and never knew when to quit,

eating so much that he would sometimes make himself sick; that when others had finished he would go to the table and eat from the various plates; that he would go to the cellar and open cans of fruit and eat therefrom and drink from the crocks of milk.

In April, 1893, after his mother's death, on the petition of his half-brother, one of the appellees herein, a conservator was appointed to take charge of McKinney's property, which at that time, according to the petition, consisted of about ninety acres of land and about $4000 of personal property. This appointment was made the month preceding the execution of the will. The conservator was appointed and apparently acted for some time, and was followed by a successor, but there is no proof in the record as to whether a conservator had charge of his property up to the time of his death. One of the persons who had acted as conservator testified for appellants that McKinney had sufficient mental capacity to understand what property he had and how he wished to dispose of it.

The will was drafted and executed in Danville, in the law office of attorney Lawrence, the husband of one of the beneficiaries. One of the attesting witnesses was called on at his store by Reason Shepherd and asked to act as such. This witness, M. S. Plaut, swore that he thought McKinney was of sound mind and memory at the time. The other witness, C. E. Jones, a near neighbor of the testator, testified that he was asked by McKinney to go to Danville to act as a witness. His testimony at the time the will was presented for probate was of such a nature the probate was allowed. On the trial in this case he testified that he did not think that the testator, judged by what he told witness afterwards, understood, at the time the will was executed, what he was about. It seems he drew this conclusion largely from the fact that the testator told him, a short time after the will was executed, that he did not know much about the will, but said he had left his cousin

Josie $500 and Reason Shepherd $500, and "the balance of my property goes to my half-brother and sister." The cousin Josie was Reason Shepherd's wife. The testimony of both attesting witnesses was that there was no discussion of the contents of the will at the time it was executed. Some of the witnesses testified that McKinney had been confined in an asylum for a time, but just how long the record does not show. One of the witnesses testified he had been there about two years. There was no attempt to show whether he was sent to the asylum at the time of the appointment of the conservator herein referred to, or whether there was another trial and finding upon which he was confined in the asylum.

We have not attempted to detail all of the evidence but have given the substance of the most material things bearing on the testator's mental capacity. We can reach no other conclusion than that the great weight of the evidence supports the verdict of the jury and the decree of the court on that question.

Counsel for appellants earnestly contend that the trial court erred in admitting the record of the county court to show that a conservator had been appointed for McKinney in April, 1893, on the ground that the statute under which that trial was held only required proof that he was unable, from any cause, to control, direct or manage his property; that a conservator might have been appointed under that statute because McKinney was a spendthrift. The first section of the statute in force at the time of the appointment of the conservator (Hurd's Stat. 1891, p. 930,) is somewhat similar in wording to the present statute. There was at that time another statute which provided for an inquisition in insanity if the person was to be confined because of mental unsoundness. (Hurd's Stat. 1891, p. 926.) While both of these statutes have been amended or revised since that time, (Hurd's Stat. 1913, pp. 1581, 1588,) they are, so far as they bear on this question, substantially like

269 — 28

the ones then in force. The argument of counsel for appellants on this point is, that by the statute then in force, under which the conservator was appointed, it was only necessary to show that McKinney was incapable, for any reason, of managing and caring for his property, while the issue in the present case was whether he had sufficient mental capacity to make a will. No question is raised here that the record of the appointment of the conservator was not correctly certified to and properly admissible in evidence if it was competent on the issue here involved. Ordinary inquisitions in lunacy are held admissible in evidence as bearing on the question of the mental capacity of the person who was the subject of such inquisition, but such inquisitions or records are not generally conclusive except against the parties immediately concerned and their privies. (1 Greenleaf on Evidence,—16th ed.—sec. 556.) Such a record is generally only *prima facie* evidence as to the sanity or insanity of the person at the time when the adjudication was made. (7 Ency. of Evidence, 477, and cases cited.) It is true, as contended by counsel for appellants, that the proof under the two statutes as to lunatics in force at the time said conservator was appointed might have been different in the case of the mere appointment of a conservator than would be required if the patient was also to be confined in a hospital for the insane, but we do not think that fact would prevent the admission of the records of a proceeding under either statute on a hearing of this character. The general rule is that the admission in evidence of an adjudication of insanity does not depend upon whether it was founded upon an oath or not, but rather upon the public nature of the hearing and the public interests involved. (1 Greenleaf on Evidence,—16th ed.—sec. 556.) The verdict of the jury upon which the appointment of the conservator was based found that McKinney was insane. In view of the history of this man, as shown in this record, from the time of his boyhood, the

record of the county court as to the appointment of a con-
servator for McKinney in 1893 was admissible, not as con-
clusive on the question of insanity, but to be considered by
the jury for what it was worth. If the proof in this rec-
ord had shown that the conservator was appointed for the
sole reason that McKinney was a spendthrift or a drunkard
a different question as to the admissibility of the county
court record would be presented. The reasoning of this
court in *Bollnow* v. *Roach,* 210 Ill. 364, on an analogous
question, tends to support this conclusion. This court held
in *Entwistle* v. *Meikle,* 180 Ill. 9, that the record of the
appointment of a conservator three years after the will was
made was too remote to the issue to be admissible. We do
not consider that case as in any way conflicting with the
conclusions already reached here as to the admissibility of
the record in question in this case The case of *In re Weed-
man's Estate,* 254 Ill. 504, was a hearing on an application
for the probate of a will, and therefore is not in point on
the admissibility of this record in this proceeding.

Counsel for appellants further contend that the testi-
mony of the attesting witness Jones as to the conversation
concerning the contents of the will, a few days after it
was executed, was inadmissible, being, in effect, an attempt
to revoke a will by parol evidence. At the time this tes-
timony was offered the court ruled that it was admitted
solely on the ground of its bearing on the mental capacity
of the testator. The declarations of the testator, made
either before or after the execution of an alleged will, as
to his testamentary intentions, are competent on the ques-
tion of his testamentary capacity. (*Hurley* v. *Caldwell,*
244 Ill. 448; *Kellan* v. *Kellan,* 258 id. 256.) The admis-
sion of this testimony was therefore not error.

Counsel for the appellants further argue that the trial
court, contrary to the holding in *Wetzel* v. *Firebaugh,* 251
Ill. 190, permitted witnesses for appellees to express opin-
ions as to the ultimate facts to be determined by the jury.

This question was raised in this court for the first time in the reply brief of appellants. Under the rules of this court and its long settled practice, questions not raised by appellants in the original brief cannot be raised in the reply brief. A contrary practice would permit appellants to argue questions in their reply briefs as to which counsel for appellees would have no opportunity to reply. This question therefore need not be considered.

Before the jury was empaneled and the issue as to the mental capacity of the testator taken up for a hearing, certain proof was offered by appellees as to the relationship of George Holliday and his co-complainants, and certain testimony of Albert McKinney as to why his sister, Malinda Nichols, did not join with him as a contestant. Counsel for appellants insist that the court erred in admitting any of this testimony, as it was given by parties who under the statute were not competent to testify. Conceding, for the purposes of this argument, that counsel are right, we cannot see how it in any way injuriously affected the issues before the jury as to the testator's mental capacity.

Numerous errors are assigned on the record but few of them have been argued. Errors assigned and not argued are waived. (*Lewis* v. *King,* 180 Ill. 259; *Sullivan* v. *Atchison, Topeka and Santa Fe Railway Co.* 262 id. 317.) The questions already considered are the only ones, as we read the briefs, that are argued therein by counsel for appellants.

We find no reversible error in the record. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*