1814.

SMITH
v.
LOWRY.

———◦ ✳ ◦———

*October* 26th.

SMITH AND MEAD *against* LOWRY.

An *injunction* will not be granted to stay proceedings at law, on a judgment,
on the ground that the defendant at law was prevented, by public business,
from making due preparations for, and attending at the trial, and that the
plaintiff had, on the evidence of one witness, whom he had suborned to swear
falsely, recovered a verdict for a much larger sum in damages than he was
justly entitled to ; and that the supreme court had refused to grant a new
trial in the cause.

THE bill, which was for an injunction, stated, that in *May,*
1811, the plaintiffs contracted to deliver to the defendant,
in satisfaction of a debt of 675 dollars, owing to him, 140
barrels of salt, at *Portland*, on the southerly side of lake
*Erie*, on the 1st of *September*, 1812. That war interven-
ing with *Great-Britain*, and obstructing the communication
between the salt works at *Onondaga* and that place, the
parties agreed that the contract should be satisfied by
the payment of 100 dollars in cash, and a quantity of hats,

and the residue in salt, to be delivered at *Lewistown*, in *Niagara* county, at the market price. That the plaintiffs were ready to perform the contract, but that the defendant was not ready to receive. That the defendant, afterwards, sued *Smith*, in the supreme court, on the contract first made, and the cause was brought to trial at the *Onondaga* circuit, in *June*, 1814. That *Smith*, for some weeks previous to the time of trial, being engaged in public business, in transporting public stores from *Oswego Falls* to *Sackett's Harbour*, could not be allowed to quit the public service, to prepare for the trial, so that due preparation, on his part, was not made.

That, at the trial, the present defendant proved, by one witness, that on the 1st of *September*, 1812, he sold 18 bushels of salt, at *Portland*, for 12 dollars a barrel; and, on this evidence, a verdict was found for the plaintiff in that suit, estimating the salt at that rate, for above 2,000 dollars. That *Smith*, at the last *August* term of the supreme court, applied for a new trial, on affidavits of seven witnesses residing at *Portland*, that the price of salt, in that place, in *September*, 1812, was 8 dollars a barrel; that the village was small, and half the quantity contained in the contract would have overstocked the market; but the supreme court refused to grant a new trial, merely to enable the party to diminish the damages. That, since the trial, the plaintiffs have discovered that the witness produced by the present defendant, at the trial, was procured by subornation and corruption: that the defendant procured the witness, as his agent, to make a pretended sale of 18 bushels of salt, to a purchaser, substituted by the defendant for that purpose, at the rate of 12 dollars a barrel, which sale was not *bona fide*, but collusive; that the same 18 bushels were purchased at *Portland*, about the 1st of *September*, 1812, at 8 dollars per barrel.

That a *fi. fa.* had been issued on the judgment of the supreme court; and the plaintiffs prayed an injunction, &c.

1814.

SMITH
v.
LOWRY.

1814.

SMITH
v.
LOWRY.

October 26th.

*Gold,* for the plaintiffs.

THE CHANCELLOR. This is not a case in which the court can interfere with the verdict and judgment at law. The plaintiff, *Smith,* was in public employment for some weeks previous to the trial, but he was, at the time, in or near the county of *Onondaga,* and he had an attorney and counsel employed to attend to his cause; and it does not appear that any application was made, on his part, to the circuit court, to postpone the trial. He must have known, or he was bound to know, that he was sued upon the original written contract mentioned in his bill, and that the price of salt, at the place of delivery, on the 1st of *September,* 1812, would be a matter of inquiry at the trial. He may, therefore, be considered, from his own statement, as having voluntarily gone to trial on the question of damages, as to the value of the salt, and the application for a new trial was not on the ground of irregularity or surprise, but on the discovery of testimony, to prove the damages excessive. The only new ground of equity set up is, that, since the application for the new trial, he has discovered that the testimony of the witness, who proved upon the trial the price of salt at *Portland,* was procured by subornation and perjury, and that his testimony was founded upon a fictitious sale, contrived for the occasion. But the general rule at law is, that a new trial is not to be granted to give the party an opportunity to impeach the credit and integrity of a witness. (*Duryee* v. *Dennison,* 5 *Johns. Rep.* 248.) This case resolves itself into a mere question of excess of damages, arising from the want, as the bill expresses it, " of due preparation" when the plaintiff went to trial. The fraud alleged in procuring the testimony of the witness could have been sufficiently repelled and defeated by the testimony of the witnesses since procured, as to the true state of the market, and the true price of salt at *Portland,* at the time fixed by the contract for the delivery. The plaintiff, *Smith,* had ex-

cessive damages given against him, at the rate of 12, instead of 8 dollars a barrel for salt, merely because he went to trial unprepared. The cases of relief in equity, against judgments at law, founded in fraud, are, when the fraud goes to the whole judgment, and not to the mere excess of damages in a case properly sounding in damages ; and when the fraud could not have been met and defeated at the trial. It would be setting a precedent most inconvenient to the public, for this court to interfere in a case like this, of the alleged perjury of a witness, on a question as to the amount of damages, and to provide for a new trial when an application for a new trial has already been denied at law, and when courts of law exercise a most liberal and equitable discretion on the subject of new trials, and when the injury complained of is, in a great degree, to be imputed to the party's own want of preparation.

Applications to this court for a new trial, after a verdict at law, are very rare in modern times, since courts of law exercise the same jurisdiction, and to the same liberal extent. In the late case of *Bateman* v. *Willoe,* (1 *Schoale & Lefroy,* 201.,) Lord *Redesdale* observed, that " a bill for a new trial was watched by equity with extreme jealousy, and it must see that injustice has been done, *not merely through the inattention of the parties ;* and he held it to be unconscientious and vexatious, to bring into a court of equity a discussion which might have been had at law." Even in the old cases, and before new trials were much known and used at law, the court of chancery proceeded with great caution in awarding a new trial at law. In *Curtis* v. *Smallridge,* (1 *Ch. Cas.* 43. 2 *Freeman,* 178.,) the bill was for relief against a recovery in *trover ;* and though it appeared that the recovery was unjust, and had so been admitted by the plaintiff in law, *yet, as it did not appear that the defendant at law was prevented by accident from having his witnesses* at the trial, the Master of the Rolls would not grant a new trial for the neglect of the party, and so dismiss-

1814.

SMITH
v.
LOWRY.

ed¹ the bill. In *Tovey* v. *Young*, (*Prec. in Ch.* 193.,) the bill for a new trial at law was dismissed, though the plaintiff had discovered, since the trial, that the principal witness against him was interested ; and the Lord Keeper observed, that " new matter may, in some cases, be ground for relief, but it must not be what was tried before ; nor, when it consists in swearing only, will I ever grant a new trial, unless it appears by deed or writing, or that a witness, on whose testimony the verdict was given, was convicted of perjury." And Lord *Hardwicke*, in *Richards* v. *Symes*, (2 *Atk.* 319.,) refused a new trial on the suggestion that the party was not apprized of a particular evidence, and, therefore, not prepared to meet it. The chancery cases have generally agreed in granting a new trial at law, on the discovery since the trial, of a receipt or acquittance in full of the demand. (The Master of the Rolls, in *The Countess of Gainsborough* v. *Gifford*, 2 *P. Wms.* 424. *Hennell* v. *Kelland*, 1 *Eq. Cas. Abr.* 377. and 2 *Vern.* 437., cited *ib.* *Williams* v. *Lee*, 3 *Atk.* 223.) But since the decision in the K. B., in *Marriot* v. *Hampton*, (7 *Term Rep.* 269.,) this doctrine seems to be overruled, on the broad ground that there must be an end of litigation ; and it may be questioned whether equity would now interfere, even in this case, after the refusal by a court of law. I find that so early as the case of *Sewell* v. *Freeston*, (1 *Ch. Cas.* 65.,) the court of chancery refused assistance where the defendant at law had written a letter which the plaintiff could not prove at the trial, and which would have discharged him.

Upon the whole, it appears to me that, under the circumstances of this case, the plaintiff is not entitled to the interference of this court to stay execution on the judgment, and that the motion for an injunction must be denied.

Motion denied.