## Miles Hewitt, Admr.,

*v.*

## Harvey B. Lucas.

1. New trial *at law — when awarded by decree in chancery.* The rule is, that a court of chancery will use its power to set aside a verdict and judgment at law only where it is made clear that a wrong has been done. The evidence must be very satisfactory.

2. It would be establishing a most dangerous precedent, to hold, that random expressions used in casual conversations, sworn to after a long lapse of time, and improbable in themselves, could be made a sufficient basis for awarding a new trial.

3. Hence, the testimony of two witnesses as to statements made in a casual conversation, which testimony is negatively contradicted by three other witnesses who were present at the same time and heard no such statements, will not authorize a new trial; especially in view of the facts that considerable time had elapsed, that the attention of the two witnesses had not been particularly directed to the conversation, and that the statements were in themselves extremely improbable.

Writ of Error to the Circuit Court of Washington county; the Hon. Silas L. Bryan, Judge, presiding.

Harvey B. Lucas brought an action of assumpsit in the Circuit Court of Washington county, at the August Term, 1863, against Jackson Baldwin. Some time previous, Lucas had obtained an injunction against one Gideon Burton, and Baldwin at that time became his security on the injunction bond.

To indemnify Baldwin against any risk from the bond, Lucas placed in his hands money to the amount of $1,100. The chancery suit against Burton was gained by Lucas. Lucas then brought the suit in assumpsit for the deposit. Baldwin died about the 1st of January, 1864, and Miles Hewitt was appointed his administrator. At the fall term of that year, Hewitt, as administrator, having been made defendant, the cause was tried by a jury.

The evidence on the part of the defendant was, in substance, that Nacy Earls saw Baldwin pay Lucas $600 on the 11th of September, 1863; that Isaac Ellifritz, perhaps a month afterward, saw money paid over by Baldwin to Lucas, with the remark " we are now square." The verdict was for the defendant, and judgment was rendered against Lucas for costs. A motion for a new trial was overruled.

In February, 1865, Lucas filed his bill in chancery in the Washington Circuit Court, setting out the foregoing facts, and charging that both of said witnesses had sworn falsely in their testimony on the trial, and that Hewitt had procured them to do so. The Circuit Court, upon evidence as stated in the opinion of the court, decreed a new trial. To reverse that decree this writ of error is prosecuted.

Messrs. O'MELVENY, WATTS & STOKER, for the complainant in error.

Messrs. BATES & SANDERS, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill in chancery, filed by Lucas against Hewitt, as administrator of Jackson Baldwin, deceased, for the purpose of procuring a new trial in an action at law brought by Lucas against Baldwin, and tried at the September Term, 1864. Lucas had placed $1,100 in the hands of Baldwin to indemnify him as security on an injunction bond, with the understanding that the money should be repaid, if Lucas succeeded in the suit. He did succeed, and the suit referred to was brought to

recover the money. The defense was payment, and two witnesses, one Ellifritz, and a woman named Nacy Earls, swore to having seen Baldwin pay Lucas money in full settlement. The jury on this evidence found a verdict for the defendant. This bill charges that these witnesses, by the procurement of Baldwin, committed deliberate perjury, and that the means of proving this first came to the complainant's knowledge after the trial. The Circuit Court, on the evidence in this record, decreed a new trial.

This decree rests chiefly on the testimony of Mary Lester and her mother, Sarah Lester, who swore, that, about the time the suit against Baldwin was commenced, he was at their house and there stated that he owed Lucas a thousand dollars, but never intended to pay him, and that he could hire witnesses to prove he had paid. George Mitchell swears, that he was at the court house at the time of the trial between Lucas and Hewitt, who had been made a party to the suit in place of Baldwin, deceased, and that, in talking with Nacy Earls she patted her basket and said she had it full of greenbacks, and that the squire and the widow said she never should suffer. The witness understood her to refer to Hewitt and to Baldwin's widow. She subsequently stated to another witness that Julia Baldwin ought to pay her some money,— that she could not afford to lose her time for nothing.

On the other hand, Jeremiah Lester, the husband of Sarah Lester, and two other witnesses, swear they were at the house of Jeremiah at the time to which the testimony of Sarah and Mary Lester must have referred, and they heard Baldwin make no such statements as those attributed to him by Sarah and Mary. It is true, it is possible he may have made such statements, and that they were not heard by the other persons present, but, from what appears in the record as to the manner in which the conversation was conducted, it would seem that the other witnesses had the same opportunities of hearing what he said as Sarah and Mary Lester. Moreover, we are to consider, in weighing this testimony, the extreme improbability that a person, against whom a suit was pending, would state in

Opinion of the Court.

the presence of half a dozen acquaintances, that he did owe the sum sought to be recovered in the suit, but that he intended to evade payment by bribing witnesses to commit perjury, and thereby himself commit a felony for which the law would send him to the penitentiary. This species of testimony, in regard to statements made in conversations held long before the witness testifies, and to which statements his attention has not been especially directed, is, at best, very unsatisfactory. In this case, the testimony of Sarah and Mary Lester, contradicted as it is, at least negatively, by three other witnesses, and highly improbable in itself, is very far from justifying the interference of a court of chancery for the purpose of setting aside a verdict and judgment at law. We are of opinion, indeed, that it must be wholly laid out of view. There remains then nothing but the boastful and improbable statement sworn to have been made by the witness Nacy Earls, at the time of the trial, that she had her basket full of greenbacks, and that the squire and the widow said she never should suffer. It is only necessary to say of this statement, that it is altogether too loose, vague, and uncertain to be made the basis of a decree. What was really intended by this idle language is at best but matter of conjecture, and we are not prepared to say the speaker meant she had just committed a crime for which she had been paid her basket full of greenbacks.

The rule is, that a court of chancery will use its power to set aside a verdict and judgment at law, only where it is made clear that a wrong has been done. The evidence must be very satisfactory. *Crafts* v. *Hall*, 3 Scam. 131.

In the case before us, it is not so, and we should be establishing a most dangerous precedent, if we were to hold, that random expressions, used in casual conversations sworn to after a long lapse of time, and improbable in themselves, can be made a sufficient basis for awarding a new trial.

We are of opinion that the decree in this case must be reversed and the cause remanded.

*Decree reversed.*