# CHARLES H. BOYDEN, Executor, *et al.*

*v.*

# JOHN G. REED.

1. BILL OF REVIEW—*and bill to impeach a decree for fraud.* A bill of review may be brought upon the discovery of new matter, but it must be material and relevant, and such as, if known, would probably have produced a different termination from that reached in the former decree sought to be impeached. It must generally be new matter, to prove what was before in issue—not to make a new case, but to establish the old one.

2. But the general rule is, that evidence which tends simply to impeach testimony given in the former case will not be regarded as sufficient to sustain a bill of review.

3. And the matter must not only be new, but it must be such that the party, by the use of reasonable diligence, could not have known of before the former hearing, so as to have produced it at that time.

4. If a decree has been obtained by fraud, it may be impeached by original bill, and where a decree has been so obtained, the court will restore the parties to their former rights, whatever they may be.

5. But it is not enough to allege and prove, that false testimony was, in fact, heard at the time the former decree was pronounced. If the ground of the relief sought be, that the decree was obtained by means of false testimony procured to be given by the party in whose favor the decree was rendered, it must appear, in addition to the fact that false testimony was heard, that its absence would, in all probability, have produced a different result.

6. It seems to be no objection to a bill, that it partakes of the nature both of a bill of review, on the ground of new matter discovered after the former decree, and a bill of review in the nature of an original bill, to impeach a decree on the ground of fraud.

APPEAL from the Circuit Court of Putnam county; the Hon. S. L. RICHMOND, Judge, presiding.

This was a proceeding in chancery, commenced in the circuit court of Bureau county, to set aside a decree rendered in that court, in 1855, on the ground that the decree was obtained by fraud, and taken by change of venue to Putnam county. The opinion contains a sufficient statement of the case.

Mr. MILTON T. PETERS and Messrs. ECKLES & KYLE, for the appellants.

Messrs. GRANT & SMITH and Messrs. GIBBON & STIFF, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case may properly be said to possess a two-fold nature. The appellee insists, that it is purely an original bill to impeach a former decree on the ground of fraud, and the appellants insist, that it is a bill in the nature of a bill of review, on the ground of newly discovered evidence. Some of the elements common to both classes of bills may be found combined in the present one.

A bill of review may be brought upon the discovery of new matter, but it must be relevant and material, and such as, if known, would probably have produced a different determination from that reached in the former decree sought to be impeached. It must generally be new matter, to prove what was before in issue, and not to prove a title not before in issue —that is, not to make a new case, but to establish the old one. Story's Eq. Pl. sec. 413, and notes.

Another qualification of the rule is, that the matter must not only be new, but it must be such that the party, by the use of reasonable diligence, could not have known of it before the former hearing, so as to have produced it at that time, for if there be any laches or negligence, it will bar any relief.

If a decree has been obtained by fraud, it may be impeached by original bill, and where a decree has been so obtained, the court will restore the parties to their former rights, whatever they may be. Mitford Pl. 93.

A bill to set aside a decree for fraud, must state the decree, and the proceedings which led to it, with the circumstances of fraud, in detail, on which it is sought to be impeached. Adams' Eq. 420.

From these definitions it will be seen, that a bill of review, on the ground of new matter discovered after the former decree was enrolled, and a bill of review in the nature of an original bill, to impeach a decree on the ground of fraud, are very nearly allied in their nature, and it does not seem to be an objection to the bill, that it partakes of the nature of both classes of bills. In the present discussion it may be necessary to apply some of the principles applicable to each class, to the case now under consideration.

On the third day of July, 1868, the appellee filed in the Bureau circuit court, his bill in chancery, to impeach for fraud a decree rendered in favor of Edward D. Kemp, the ancestor of the appellants, and against the appellee, on the seventh day of April, 1855, by the Bureau circuit court, which decree was afterwards, on appeal, affirmed by this court.

The bill alleges, that the appellee was the owner of the land in question; that he was indebted to the said Kemp, in his lifetime, in the sum of sixty-five dollars for borrowed money, and that, to secure the payment thereof, he executed and delivered to Kemp the agreement, claimed by the complainant in the original suit, to be an agreement for the sale of the land, and that said agreement was executed simply as security for the said sum of money, and for no other purpose. The bill then recites the proceedings had in the former suit, by which the then complainant obtained a decree for the specific performance of the contract in his favor, on the ground, that it was an agreement for the sale of the land, and not a security for any sum of money due him from Reed, and then charges that said decree of said court was obtained by Kemp, and the court was procured and caused to make said decree by and through and by reason of the deceit, fraud, covin and misrepresentations of Kemp, the then complainant, by the perjury and false swearing of witnesses suborned, bribed and procured to bear false witness against the appellee, the then defendant, by the said Kemp, in this, to-wit: The said Kemp wilfully, knowingly and falsely alleged, in his said bill to said court,

that said writing was an absolute agreement on the part of appellee to convey said land to him in fee simple, well knowing that, in truth and in fact, said writing was, and was intended to be by appellee at the time he signed it, and professed to be by said Kemp, merely and only a security for the payment by appellee to said Kemp of the said money lent as aforesaid by said Kemp to appellee; and in this, to-wit: that said Kemp suborned and procured John Shank to swear as a witness in said cause, and to depose and testify wilfully, knowingly and falsely, and sets out at length the testimony of the said Shank, alleged to be false.

The bill further charges, that although appellee well knew at the time of the commencement of said suit, and the taking of said testimony, of the fraud and perjury, and although he has ever since been anxious in endeavoring to prove the same, yet not until the last term of the court has he had, or been able to get, any information or knowledge of any means of proving the frauds and perjuries, and that he now believes and charges that he can, by competent and satisfactory evidence, clearly prove the alleged frauds and perjuries.

The appellee afterwards filed an amended bill, in which he set forth more specifically the efforts which he had made to discover testimony by which to impeach the said decree, and charges that he can prove, that the said Edward D. Kemp, deceased, admitted that the said contract in writing was merely a security for the payment of the sum of sixty-five dollars, and that he had procured the said John and Parmelia Shank to testify falsely, as hereinbefore alleged; and that he can prove that the said John Shank admitted, that he and his said wife, Parmelia, had testified falsely at the request of said Edward D. Kemp, and upon the promise of said Edward D. Kemp that he would give the said Shank a yoke of oxen therefor, and that the said Kemp had afterwards refused to give him the oxen, and that he would have prosecuted Kemp, if he had not been also liable to punishment.

The prayer of the bill is, that the former decree, vesting the title of the land in the said Kemp, be set aside ; that an account of the rents and profits be taken, and for general relief in the premises.

This bill was not filed, as the record shows, for some thirteen years after the original decree, which it seeks to impeach, was rendered, and not until some five years after the death of Edward D. Kemp, the original complainant, and not until after the death of John Shank, whose testimony is alleged to be false, and whose testimony is alleged to have been procured by subornation of perjury.

The evidence on which the original decree was rendered, is embodied in the present record. The sufficiency of that evidence to support the decree then rendered, has been passed upon by this court, and the decree sustained. *Reed* v. *Kemp*, 16 Ill. 445.

Our attention has again been directed to that evidence, and after a careful consideration we are of opinion that the decree in the former case could have been amply sustained, and would have been, without the testimony of John and Parmelia Shank, whose testimony is now alleged to be wholly false, and to have been procured by wicked and corrupt practices. The evidence of these two witnesses might have been rejected *in toto*, as unworthy of credit, and still the result would have necessarily been the same. The agreement embodied in the record, signed by the appellee himself, the execution of which was not then, and is not now, denied, together with the other evidence, against the credibility of which no insinuation was then, nor is any now, made, would fully sustain the decree. If all that appellee alleges against the evidence of John and Parmelia Shank be admitted to be true, and to have been procured through the corrupt practices charged, still it would not, and could not, have altered the result of the former suit.

Before it will avail the appellee anything to show that false testimony was, in fact, heard on the former hearing, he must show, in addition thereto, that the absence of the evidence

alleged to be false, would, in all probability, have produced a different result. We understand that all the authorities go to this extent. We have not been referred to any case that holds the doctrine, nor do we know that any exists, that the mere fact that false testimony, procured even by subornation of perjury on the part of the party seeking to use it, would, of itself, if there was credible and unobjectionable testimony that would entitle the party to the relief obtained, be sufficient ground for impeaching the decree, if the false testimony, and the corrupt practices by which it was obtained, should be subsequently discovered.

The distinct allegation of this bill, upon which it is sought to predicate the right to relief as to the fraud used by Edward D. Kemp in procuring the decree, is, that he suborned the witnesses, John and Parmelia Shank, to bear false testimony, and that Kemp knew at the time he alleged in his bill that the agreement between the parties was a contract of sale of the land, that the allegation was wholly false.

If the appellee does not show in what manner he was injured by the subornation of these witnesses, we do not see how he can predicate any right to relief on that fact alone, and how could he be prejudiced, if the fact be conceded, if the testimony of these witnesses was not necessary to aid the finding of the court, and if the decree would have been the same, on the other evidence in the case, in the absence of their testimony in the record. If the testimony of these two witnesses, which is alleged to be false, and to have been procured by subornation, had been the only important evidence in the case, it would present a very different question for the consideration of the court.

The general rule is, that evidence that tends simply to impeach testimony given in the former case will not be regarded as sufficient to sustain a bill of review. *Smith* v. *Lowry*, 1 Johns. Ch. 320.

It must be of that clear and distinct character as original evidence, that would materially affect the ground of relief in

464      Boyden *et al. v.* Reed.      [Sept. T.,

Opinion of the Court.

the former decree, and such as would show that a different result would necessarily have been produced if it had been heard on the former hearing. This doctrine was held in the case of *Livingston* v. *Hobbs,* 3 Johns. Ch. 124, and is fully supported by authorities.

If this bill be regarded simply as a bill in the nature of a bill of review, to impeach the former decree solely on the ground of fraud in its procurement, then the evidence to support that allegation must be clear and satisfactory, and unclouded by doubt or uncertainty. A decree once enrolled will not be set aside but for the strongest and most satisfactory reasons. It must be shown, by satisfactory evidence, that the fraudulent acts and practices charged operated to procure the decree sought to be impeached, and that it could not have been procured without such fraudulent practices. It is not enough to allege, and prove, that false testimony was, in fact, heard at the time the former decree was pronounced. If such were the general rule, it would lead to most disastrous results, and many decrees, much older than this, could be set aside. There must be some fraud alleged and proved in the procuring of the decree itself, before a court of equity will interfere to set aside a decree on that ground. *Ray* v. *Hulbert et al.* 17 Ill. 572.

The evidence principally relied upon to establish the fraud of Kemp, in procuring the former decree, is the testimony of Parmelia Shank, the wife of John Shank, and her daughter, and one Cummings Cherry. The other testimony taken at the hearing of this cause is simply cumulative to the testimony heard in the original case, and can not now be considered.

No doubt is entertained of the power of a court of chancery to look into a judgment or decree of any court, and if it is found that such a decree or judgment was obtained by fraud, to cancel and vacate the same. *Webster* v. *Reid,* 11 How. 437; *Wing* v. *Wing,* 9 Mod. 109; *Dobson* v. *Pierce,* 12 N. Y. 165.

But this will never be done, except upon the most satisfactory evidence. Such evidence is wholly wanting in this case.

After the lapse of many years, and after the death of the principal actors in the original cause, for the purpose of impeaching the former decree, Parmelia Shank, and her daughter, Minnie, are brought forward to testify to admissions made by Kemp, in his life time, and the witness, John Shank, both of whom have long since been dead. If the evidence of these two witnesses is to be implicitly relied on, it goes only to the extent of showing, that one of the witnesses on the former hearing was suborned to testify falsely, and that Kemp, in his life time, and after the former trial, admitted that what he had solemnly sworn to in open court, when interrogated at the instance of appellee, in reference to the true meaning of the agreement between the parties, was untrue and false. To the same effect, also, is the testimony of Cummings Cherry. The testimony of all these witnesses is clouded with grave suspicion, and is given under such circumstances as tend, most strongly, to weaken and destroy its force. Mrs. Shank is now an old woman, and, to say the least of her, she is a very simple and feeble minded woman. She and her daughter were both brought here from the State of Ohio, at the instance of and by the appellee, for the sole purpose of being witnesses in this case. This old woman is put on the witness stand, and she not only testifies to her own crime of perjury in swearing falsely on the former hearing, but she and her daughter both testify, that their now dead husband and father was guilty of the crime of willful and corrupt perjury, and reproduce his deliberate admissions of that fact. Such conduct, to us, seems unnatural, and it is exceedingly difficult to believe that they ever voluntarily, or uninfluenced by improper motives, gave such testimony. There is some evidence in this record that tends to show that these simple-minded people had been tampered with for improper purposes. However this may be, their evidence, to say the least of it, is too unsatisfactory in its nature to be relied upon with sufficient confidence to set aside and vacate a solemn decree of court that has stood for

466          BOYDEN *et al.* v. REED.          [Sept. T.,

Opinion of the Court.

thirteen years, and has been affirmed by the highest judicial
tribunal in the State. *Sanford* v. *Bryan*, 2 Paige, 47.

The same may be said of the testimony of Cherry. If his
testimony is to be relied on at all, it is unsatisfactory in its
character, and proves no substantial fact that would invalidate
this decree. *Hewitt* v. *Lucas*, 42 Ill. 296.

It is a general and well recognized rule, that if a party
would impeach a judgment or decree on the ground of fraud,
he must be diligent in discovering the fraud which he alleges
to exist. If he is guilty of laches, it will bar any relief. The
appellee, in this case, has shown no diligence whatever. The
witnesses by whom he sought to prove the fraud alleged on
the part of Kemp, in procuring the former decree, were per-
sonally known to him, and some of them resided in his imme-
diate neighborhood, and the residence of the others was well
known. The son of the appellee seems to have been the
principal party that originated and instituted these proceed-
ings, and to have been in possession of the facts that led the
appellee to discover the evidence by which to prove the fraud
alleged, on the part of Kemp. Although his son was a mem-
ber of his own family at the time the principal events trans-
pired, appellee now states, that he never inquired of him con-
cerning them, or of what information he possessed in regard
to the matters in controversy. This source of information
was always accessible to him, and he ought not now, after the
lapse of so many years, and after the death of his former
adversary, be allowed to assert this claim. Story Eq. Pl. sec.
419.

After a most careful consideration of this entire case, we
can perceive no ground of relief, and no cause for setting aside
the former decree of the court. For the reasons indicated, the
decree of the circuit court will be reversed and the bill dis-
missed.

*Decree reversed.*