## John E. Lancaster et al. v. Frank G. Springer et al.
### Gen. No. 12,172.

1. BILL OF REVIEW—*when facts can only be set up by, as newly discovered evidence.* Where the evidence relied upon to set aside the decree sought to be questioned is such as would have been competent in the original proceeding, the same can only be availed of by bill of review setting up that such evidence is newly discovered and showing that the same could not have been discovered for introduction in the original proceeding by the exercise of due diligence.

2. BILL OF REVIEW—*when will be stricken from files.* A bill of review predicated upon newly discovered evidence, filed without leave of court, will be stricken from the files on motion.

3. DECREE—*character of fraud essential to impeach.* The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.

4. LEAVE OF COURT—*when essential to file bill to set aside decree.* A bill of review upon the ground of newly discovered evidence cannot be filed without first obtaining leave of court for that purpose, and such leave is equally necessary in cases where the averment of newly discovered evidence is united with or accompanied by a charge of fraud in obtaining the decree.

Bill of review. Error to the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed April 19, 1906.

LESLIE A. NEEDHAM, for plaintiffs in error.

FOLLANSBEE, MCCONNELL & FOLLANSBEE and JAMES C. HUTCHINS and MAX BAIRD, for defendants in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Plaintiffs in error, John E. Lancaster, William Wallace, John T. Wallace and Laura Wallace, his wife, and Leslie E. Needham, filed, May 18, 1904, a bill of complaint against Frank G. Springer and Abbie J. Springer, his wife, Charles E. Springer and Susan R. Springer, his wife, C. W. Richardson, William J. McDowell, Peter J. Schriener, John J.

Mitchell, Fred M. Sills, Eugene E. Prussing, individually and as trustee, Illinois Trust & Savings Bank and Edward L. Springer, defendants. May 28, 1904, the complainants, by leave of court, amended their bill by substituting the word complainants for the word "conspirators," in a certain place in the bill where it is evident from the context that the word "conspirators" was used by mistake. June 8, 1904, John J. Mitchell, Fred M. Sills, Eugene E. Prussing, individually and as trustee, and the Illinois Trust & Savings Bank, entered their appearance in the cause by Hutchins & Baird, their solicitors, and filed a motion to strike the bill of complaint from the files, on the grounds that leave of the court had not been obtained to file it, as required in cases of bills of review, or in the nature of bills of review; that neither the bill nor the amendment thereof was verified in the manner required in the case of such a bill, and that the said defendants had no interest in the subject-matter of the bill.

Also, June 8, 1904, the defendants, Frank G. Springer, Abbie J. Springer, Charles E. Springer, Susan R. Springer and Edward L. Springer, by their solicitors, Follansbee, McConnell & Follansbee, entered their appearance and made a similar motion, specifying various grounds, among which is the following:

"That it appears that said bill is a bill to review and set aside a decree heretofore entered in this court in a partition suit in case No. 167,372, wherein Robert H. Lancaster was the complainant and John Lancaster et al. were the defendants, and wherein it is sought to set aside a sale made in that case, upon the ground of newly discovered evidence or evidence discovered by complainants since the entry of that decree, and because that said bill was filed by complainants without first filing herein their petition setting up such newly discovered evidence, duly verified, and obtaining leave of court to file the same."

June 22, 1904, the court found and decreed as follows:

"That this bill partakes of the twofold nature of a bill of review for newly discovered evidence to set aside the findings and decrees in a certain partition suit heretofore pending in this court in case No. 167,372, wherein Robert H.

Lancaster was the complainant and John E. Lancaster et al. were the defendants, and an original bill in the nature of a bill of review to set aside for fraud a judicial sale had under the decree in said partition suit and that the same was filed herein without leave of court having been first had and obtained therefor. And the court being now fully advised in the premises, it is ordered, adjudged and decreed that the said bill be stricken from the files of this court, and said cause dismissed at complainants' costs," etc.

The object of the writ of error is to reverse the decree, and the questions to be decided are whether the bill is such as described in the decree, and if so, whether such a bill can properly be filed without leave of the court. The facts hereafter stated are such as are averred in the bill. Nimrod Lancaster died June 14, 1895, at San Diego, California, leaving a last will and testament, by which certain real property in Cook county, Illinois, was devised, in certain proportions, to John T. Wallace, William Wallace, George Wallace, John E. Lancaster, Charles V. Lancaster, Robert H. Lancaster, Mrs. Mary Phipps and Edmonia P. Guard. By the will Mary A. Phipps and William C. Phipps, her husband, who resided in Indianapolis, Indiana, were appointed executors, and came to Chicago, Illinois, and procured probate of the will, and were appointed administrators with the will annexed. Edmonia Guard died intestate, leaving certain persons as her heirs, and Leslie A. Needham, solicitor for the complainants herein, purchased from said heirs of Edmonia P. Guard, deceased, all their interest in the estate of Nimrod Lancaster, deceased. Lots 11 to 38 inclusive is a sufficient description of the premises involved for the purpose of this opinion.

July 9, 1895, Robert H. Lancaster filed his bill of complaint in the Superior Court of Cook County, Illinois, for partition of the estate in question. All of the other devisees and also Frank G. Springer, Charles E. Springer and the Illinois Trust & Savings Bank were made parties to the bill. The usual course was pursued in the partition cause. The commissioners appraised certain of the lots in question, viz.: lots 11 to 18 and lots 32 to 38, all inclusive, at

the sum of $300 each, taking into consideration in making
said appraisement a ground lease of said lots and a mort-
gage for the sum of $30,000; and appraised lot 19 at $665,
and lots 20 to 30, both inclusive, at $485 each, taking into con-
sideration in making said appraisement a ground lease of
said lots and a mortgage encumbrance thereof for $25,000.
The court, June 29, 1901, approved the commissioners'
report and ordered a sale by the master of the premises at
public auction, for not less than two-thirds of the appraise-
ment, and the master, in pursuance of said order, sold the
premises to Frank G. Springer for the total sum of $7,000,
which sale the court, August 7, 1901, approved and con-
firmed, and September 17, 1901, the master executed to
Frank G. Springer a deed of said premises. The leases
and mortgages referred to in the commissioners' report,
·and subject to which the premises were appraised and sold,
are, as shown by the bill and exhibits attached thereto, a
lease from Nimrod Lancaster to Frank G. Springer and
Charles E. Springer, of date June 7, 1888, demising to
them said lots 11 to 18 and 32 to 38 inclusive, from No-
vember 1, 1888, to November 1, 1913, at an annual ground
rental of $500, the lessees to pay all taxes and assessments;
a trust deed of date July 20, 1904, from Nimrod Lancaster,
Frank G. Springer and wife, and Charles E. Springer and
wife, conveying lots 11 to 18 and 32 to 38, all inclusive, to
Eugene E. Prussing as trustee, to secure payment of a
promissory note of said Frank G. and Charles E. Springer,
of even date with the trust deed, for the sum of $30,000,
due in five years from date, with interest at the rate of six
per cent. per annum, payable to their own order and by
them endorsed and delivered; lease of date June 5, 1890,
from Nimrod Lancaster to Frank G. Springer, demising
lots 19 to 30, both inclusive, from July 1, 1890, to and in-
cluding July 1, 1915, for the rental of $600 per annum,
rent to commence November 1, 1890, the lessee to pay all
taxes and assessments; a trust deed of date of July 20,
1894, from Nimrod Lancaster and Frank G. Springer and
wife to Eugene E. Prussing, as trustee, conveying lots 20

to 30, both inclusive, to secure payment of a promissory note of even date with the trust deed, for the sum of $25,-000, due five years after date, with interest at the rate of *six per cent. per annum*, made by said Frank G. Springer, payable to his order, and by him endorsed and delivered.

It is not contended by any of the defendants that the bill is defective in not alleging facts, which, if proved, would not warrant the setting aside of the decree, on the ground that it was concocted and procured by fraud. On the contrary, counsel for the defendants substantially admit that the averments of fact in the bill are sufficient, if proved, to impeach the decree confirming the commissioners' report and ordering a sale as having been procured by fraud, and they also admit that a bill merely charging fraud in the procurement of the decree may be filed without leave of the court, which is unquestionably the law. In view of this, it is unnecessary to refer specifically to such parts of the bill as allege and charge facts, which, if true, tend to show that said decrees were fraudulently procured. The real contest between the parties is, whether the bill is not, as adjudged by the chancellor, in part a bill of review to set aside the partition decree on the ground of newly discovered evidence, the complainants contending that it is not, and the defendants that it is. The bill contains the following allegations:

"14. That through the efforts of Leslie A. Needham complainants have within eight months last past been informed of the hereinafter alleged facts and circumstances which these complainants believe and they therefore state the fact to be.

15. That in 1850 or 1852 Nimrod Lancaster became acquainted with one George A. Springer, now also deceased, who was then engaged in the real estate business in Chicago.

16. That on February 2, 1852, Nimrod Lancaster executed, acknowledged and delivered to George A. Springer a power of attorney, granting Springer power and authority to buy, grant, bargain, sell and convey any real estate

owned by Lancaster or that he may purchase for Lancaster, executing such deeds with or without covenants of warranty, receiving security by notes, mortgages or otherwise, and that George A. Springer under the said power of attorney at once assumed the absolute care, management, custody and control of all the real estate owned by Nimrod Lancaster, and that George A. Springer so continued in the absolute control of all property owned by Nimrod Lancaster under said power of attorney from February 2, 1852, until the said power of attorney was revoked by the death of Nimrod Lancaster, June 14, 1895.

17. That subsequent to February 2, 1852, Nimrod Lancaster was present in Chicago, Illinois, only at long intervals and then only at periods of time less in duration than one year, during all of which time prior to the fall of 1889 Lancaster was in the gold fields and mining camps of California, Deadwood, South Dakota, and the diamond fields of South Africa, excepting an occasional return to Chicago.

18. That on one of said temporary visits to Chicago, Illinois, just prior to Nimrod Lancaster's departure for South Africa, he executed, signed, sealed and delivered a second power of attorney to said George A. Springer, which power of attorney bears date of January 30, 1872, and was thereafter on February 29, 1872, filed for record in the Recorder's Office of Cook County, Document No. 15,661, and recorded in Volume 6, page 511 of said records, a copy of which is attached to this bill, incorporated into and made a part thereof, and marked 'Exhibit C', which power was never thereafter revoked by Nimrod Lancaster and remained in force and effect, and that George A. Springer at all times thereunder exercised the powers therein granted, and enjoyed the absolute care, custody, management and control of all the real and personal estate owned by Nimrod Lancaster from 1872 until revoked by the death of Lancaster June 14, 1895.

19. That during the month of November, 1889, Nimrod Lancaster, while temporarily in Chicago, sustained a severe injury to one of his hips through an accident from which

Lancaster never recovered, and from which he was confined to his room, and that during the following year, on account of said injuries, extreme age, being then about eighty years old, he grew very childish, and from then until his death was in a helpless condition, requiring the constant care of an attendant, and that he continued to suffer pain as a result of said injuries until death.

20. That subsequent to said accident, in November, 1889, Lancaster was confined to his bed or room at the home of a family named Barton, with whom he was then staying, and that he was in an enfeebled condition of body and mind and faded memory.

21. That prior to said accident, owing to his old age, hardships, privations and exposure of his long and active life, spent in prospecting and mining, Lancaster was in an enfeebled state of body and failing in mind and memory, and that at or about the time of said accident he did not possess the mental acumen, foresight and business sagacity to enable him to deal at arm's length with sharp, designing and unscrupulous men, and that the undue confidence and trust of Nimrod Lancaster was enjoyed by George A. Springer and Frank G. Springer, Charles E. Springer and Edward L. Springer, sons of the said George A. Springer; that during the year Lancaster was confined to his bed at the home of the Bartons subsequent to the said accident, he had to be lifted to and fro from his bed to his armed chair, and when carried to the table to eat would often, owing to his extreme age and nervous condition, in lifting a cup to his lips to drink, spill the contents thereof, at which times he would cry in a fretful and peevish manner.

22. That in the fall of 1890 or 1891, Lancaster left Chicago, going to San Diego, California, where the remainder of his life was spent, except that on several occasions he returned to Chicago for a few months each time.

23. That subsequent to Lancaster's arrival at San Diego, California, he grew gradually worse; that he seldom, if ever, read books or papers, not even his own correspondence, and would sit most of the time, when not confined to his bed, in a half asleep stupor.

24. That in December, 1893, Nimrod Lancaster sustained severe and permanent injuries through a second accident, which resulted in and left him for the remainder of his life paralyzed in his arms and legs.

25. That Nimrod Lancaster from his arrival in San Diego, California, until his death, each year returned to Chicago, Illinois, at which he would remain only a few months, returning to San Diego, California; that Lancaster, however, continued to grow worse until his death, July 14, 1895.

26. That the said George A. Springer, for a period of over forty-three years, under said powers of attorney enjoyed the absolute care, custody, management and control of all the real and personal property owned by Nimrod Lancaster; that about 1885, by reason of the growing age of George A. Springer, he being then about seventy-five years old, his sons, to wit, Frank G. Springer, Charles E. Springer and Edward L. Springer, gradually assumed to and did, in the place of, for and in behalf of said George A. Springer, their father, all the active duties of said George A. Springer in reference to the management of the large estate owned by Nimrod Lancaster; that Lancaster, while confined to his bed subsequent to the accident in 1889, until his death, was compelled to send for said George A. Springer,-or wait until George A. Springer or one of his said sons came to see him, in order to procure money for paying his necessary living expenses.

27. That subsequent to said accident in 1889 Nimrod Lancaster did at divers times and places sign, seal and acknowledge long contracts in or concerning his real estate without reading same or first having same read to him, and that on one occasion Nimrod Lancaster was seen to sign and acknowledge a number of long printed and written contracts without reading the same and without first having the same read to him, on the said proposed contracts being presented to the said Lancaster by either Frank G. Springer, Charles E. Springer or Edward L. Springer, sons of the said George A. Springer, and receiving the assurance of said son that 'They are all right, Uncle Nim.' Where-

upon Nimrod Lancaster signed said papers, and that subsequently on his attention being called to the fact that he could not know the contents of the contracts just executed replied : 'The contracts are in reference to some ground leases to the Springer boys,' and then following a pause, 'Oh, well, it's the Springer boys anyway, and I don't think they would take any advantage of an old man like me.'

28. That Nimrod Lancaster in 1850 was a poor man and that the large fortune which he accumulated was due to his efforts as a miner; that Nimrod Lancaster was never a business man, and that he never in fact during his whole life looked after or managed his own business affairs; but that George A. Springer was always and at all times entrusted by Lancaster to look after and transact all his business affairs; and that George A. Springer at all times had in his possession large sums of money belonging to Nimrod Lancaster, which George A. Springer and his said sons used and expended as they saw fit in improving Lancaster's property, buying more, and in paying off incumbrances upon the real estate owned by Nimrod Lancaster. That Nimrod Lancaster at or about the time of said accident in November, 1889, until his death June 14, 1895, was incompetent to contract, and that George A. Springer, Frank G. Springer, Charles E. Springer and Edward L. Springer knew that Lancaster was incompetent to contract subsequent to the accident in 1889, and knew that by reason of the confidence and trust of a lifetime by Nimrod Lancaster reposed in George A. Springer and reposed in the sons of George A. Springer, so gained by reason of their discharging the active duties necessary in the care and management of Lancaster's property, that Lancaster would sign, seal, acknowledge and deliver to them without reading or first having heard same read to him, any contract or conveyance on receiving the assurance of any of the Springers that the instrument was all right."

These allegations very clearly have no relevancy to fraud in the procurement of the decrees in the partition suit, or any of them. The partition suit was commenced July 9,

1895, and December 22, 1899, the decree therein was rendered. The averments are evidently made as an attack on the leases and trust deeds heretofore mentioned, else why the averment that Nimrod Lancaster, from about November, 1889, until his death June 14, 1895, was incompetent to contract? This is more obvious from the prayer of the bill. It is prayed, among other things, as follows:

"That the deed to Frank G. Springer conveying the legal title to lots 11 to 18, 32 to 38 and 19 to 30, all inclusive, be delivered up into court and cancelled, for the reason that said conveyance is null and void and a cloud on the title of these complainants; or that a reconveyance of said premises be had on the ground and on account of the fraud perpetrated upon these complainants and the inadequacy of the consideration so paid by said Frank G. Springer in said sale and conveyance in said partition suit."

" That the lease and two supplemental agreements executed by Nimrod Lancaster to Frank G. and Charles E. Springer, and the two instruments of assignments purporting to convey an undivided one-half interest of Charles E. Springer in said lease and two supplemental agreements; and the lease and two supplemental agreements executed by Nimrod Lancaster to Frank G. Springer, all of which are heretofore set out and referred to, be delivered up and cancelled as a cloud upon the title to said premises."

" That the trust deeds herein set out and referred to, be delivered up and cancelled, or released of record, and decreed to be no longer a lien, incumbrance or cloud upon the title to said premises."

" That issues of fact be raised on the competency or incompetency of Nimrod Lancaster to contract, and an issue of fact upon the existence or non-existence of a conspiracy as alleged herein with a common design to cheat, swindle and defraud Nimrod Lancaster, and whether or not fraud and undue influence was exercised upon Nimrod Lancaster in procuring the execution of the instruments hereinbefore set out, and that a trial of said issues so raised, before a jury, be accorded complainants."

If Nimrod Lancaster, deceased, was incompetent to contract when he executed the leases and trust deeds, or if the execution of any of said instruments was procured by fraud, it would have been competent to prove this in the partition

suit, and if the complainants, who were parties to that suit, did not then know the facts, but, as they aver, became aware of them for the first time within the eight months next preceding the filing of the bill, and if they had exercised due diligence, proof of the alleged facts can only be made on the ground that they are newly discovered, and not at all as tending to prove fraud in procuring the decree.

In United States v. Throckmorton, 98 U. S. 61, the bill was to set aside decrees as having been obtained by fraud. The court say, ib. 68: "The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." The following cases are to the same effect: Boyden v. Reed, 55 Ill. 458, 464; Ross v. Wood, 70 N. Y. 8; Adler v. Van Kirk L. & C. Co., 114 Ala. 551, 562; Stratton v. Allen, 16 N. J. Eq. 229, 232; Hamilton v. McLean, 139 Mo. 678.

"The fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. If the cause of action be vitiated by fraud, this is a defense which must be interposed, and unless its interposition be prevented by fraud, it cannot be asserted against the judgment." Freeman on Judgments, sec. 489, p. 498.

By the alleged newly discovered evidence the complainants seek to attack the decree confirming the commissioners' report and ordering a sale of the premises, not on the ground that it was concocted or obtained by fraud, but that the leases and trust deeds subject to which the appraisement was made and the sale ordered were executed by Nimrod Lancaster, deceased, at times when he was mentally incompetent to contract, and that the execution thereof was fraudulently obtained, and that they are therefore void. It is too plain for argument that this defense goes to the subject-matter of the partition suit, and might

have been made in that suit had complainants then known of it. If it be true that Nimrod Lancaster some time between 1889 and June 4, 1895, and while he was incompetent to contract, executed the instruments in question, this has no relevancy to the inquiry whether the decree of June 29, 1901, approving the report of the commissioners and ordering a sale of the premises, was procured by fraud, or whether the decree approving the sale to Frank G. Springer was procured by fraud. The bill is, as decided by the chancellor, of a twofold character. It is an original bill, in the nature of a bill of review, to set aside certain decrees of the court for fraud in procuring the decrees, and, also, a bill of review, on the ground of newly discovered evidence, to set aside certain decrees in the partition suit, and the sale to Frank G. Springer. Such being the character of the bill, it could not have been properly filed without leave of the court. In Schaefer v. Wunderle, 154 Ill. 577, the court say: "But a bill of review, upon the ground of newly discovered evidence, cannot be filed without first obtaining leave of court for that purpose; and such leave is equally necessary in cases where the averment of newly discovered evidence is united with, or accompanied by, a charge of fraud in obtaining the decree," citing Griggs v. Gear, 3 Gilm. 2, and 2 Beach's Mod. Eq. Pr., sec. 866. See, also, to the same effect: Ricker v. Powel, 100 U. S. 104, 109; Kimberly v. Arms, 40 Fed. R. 548, 558; Hodson v. Ball, 11 Simons, Ch. R. 456.

When a bill, which cannot be properly filed without leave of court, is filed without such leave, it may be stricken from the files on motion. Griggs v. Gear, 3 Gilm. 2; Hodson v. Ball, 11 Simons, Ch. R. 456; Daniell's Ch. Pr., sec. 1579.

Even on petition for leave to file a bill such as the present, it is a matter within the discretion of the court whether leave will be granted. Hoig v. Thrap, 84 Ill. 302. In Schaefer v. Wunderle, *supra*, the court say: " The true rule would seem to be that, unless there has been an abuse of the fair discretionary power with which the Circuit Court has been invested in the matter of such applications, its decision should not be disturbed."

If complainants were prepared to prove the alleged newly discovered facts, they could have filed a petition for leave to file their bill, even after it had been stricken from the files, but the averments of newly discovered evidence being on information and belief seem to indicate that they were not prepared to verify and support such petition as the practice, for good reasons, requires. Schaefer v. Wunderle, 154 Ill. pp. 577-8.

The decree will be affirmed.

*Affirmed.*