Anna M. Hintz, Administratrix of the Estate of John Hintz, Appellant, v. Minnie Moldenhauer, Administratrix of the Estate of August Moldenhauer, et al., Appellees.

## Gen. No. 30,956.

1. BILLS OF REVIEW—*when bill to set aside judgment in slander action properly dismissed for want of equity.* A bill in the nature of a bill of review, filed 20 years after recovery of a judgment against complainant's intestate in an action for slander, seeking to have such judgment set aside on the ground of newly-discovered evidence tending to show that certain testimony given in the slander suit was perjured and that the perjury was known to the plaintiff and fraudulently concealed from the intestate until shortly before the bill was filed, held properly dismissed for want of equity where the evidence showed that the issues sought to be raised were *res adjudicata* by reason of prior efforts to obtain a new trial, that the complainant was guilty of laches, and that it would be prejudicial to the rights of the parties to permit a retrial of the slander suit, in view of the decease of most of the important witnesses in the case.

2. BILLS OF REVIEW—*insufficiency of impeaching evidence to support bill.* Evidence which simply tends to impeach testimony given in a former case will not be regarded as sufficient to sustain a bill of review.

3. BILLS OF REVIEW—*what essential to set aside decree.* A court of equity will not set aside a decree upon the ground that it was obtained by false evidence, but only for fraud that gives the court colorable jurisdiction of the defense presented.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1926. Affirmed. Opinion filed February 1, 1927.

LITSINGER, HEALY & REID, for appellant.

CASTLE, WILLIAMS, LONG & CASTLE, for appellees; JESSE R. LONG, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

In March, 1890, the defendant Mary Graupner, nee Moldenhauer, recovered a judgment for $2,000 in an action for slander against complainant's intestate, John Hintz. This judgment was affirmed by the Supreme Court in June, 1891. (*Hintz v. Graupner,* 138 Ill. 158.) Twenty years thereafter, in June, 1911, the bill in this case was filed by John Hintz, in the nature of a bill of review, seeking to have the judgment against him set aside upon the ground of newly-discovered evidence tending to show that certain testimony given in the slander suit was perjured and that the perjury was known to the plaintiff and fraudulently concealed from John Hintz until a short time before the bill was filed. John Hintz died in 1913, while a demurrer to the bill was pending. In 1916 his death was suggested and his granddaughter, the administratrix of his estate, was substituted as complainant. An amended bill was filed in 1917, to which the defendants filed answers, and the cause was then referred to a master in chancery who heard the testimony and reported in favor of the defendants. In December, 1925, the report was approved and a decree entered dismissing the bill for want of equity. The complainant appeals.

The action for slander was based on statements made in 1888 by John Hintz to the effect that Mary Moldenhauer had stolen the money of Mrs. Kolberg. All the parties and witnesses lived at that time in Des Plaines. Upon the trial of that suit it appeared that in October, 1887, Mrs. Kolberg's house had been entered in the daytime, while she was away, and $80 of her money stolen from a flour barrel in which it had been concealed by her. There was evidence tending to prove that Mary Moldenhauer had stopped over night at Mrs. Kolberg's house the second night before the burglary and was told at that time where the money

was kept, and that on the day of the burglary she was seen by one of the neighbors (Mrs. Mary Schaefer) to enter and leave Mrs. Kolberg's kitchen in the absence of the latter, and by another neighbor (Carl Schaefer) was seen to "come out of Kolberg's gate" with one hand "covered with flour"; that when Mrs. Kolberg returned and discovered her loss, she went to the house of Mrs. Schaefer, who related what she had seen, and thereupon Mrs. Kolberg accused Mary Moldenhauer of the theft, but the latter denied it; that this story spread through the village and was the subject of much excited discussion, but no arrest was made; that Mary Moldenhauer was then engaged to be married to a minister named Graupner, and soon after the burglary her engagement was announced in church, whereupon John Hintz, with others, visited the clergyman who made the announcement and openly charged her with stealing Mrs. Kolberg's money.

A man named Ira Barchard lived in Des Plaines at that time. He was a constable, a deputy United States marshall, a collector of debts, sometimes a detective, and altogether apparently a man of some local importance and influence. Miss Moldenhauer sought his assistance, with the result that he testified in the slander suit, in rebuttal, to facts which made it appear that Mary Schaefer, instead of Mary Moldenhauer, stole Mrs. Kolberg's money. His testimony was to the effect that soon after the burglary "William T. Lee," whom he did not otherwise identify, wrote Barchard's name and address upon three envelopes; that "Lee" kept one of them, and that Barchard marked the other two, put stamps on them and delivered one to Mary Schaefer and one to Mary Moldenhauer, telling each of them in turn that he had been authorized by Mr. Kolberg to say that he would be satisfied if half of the stolen money was returned, and that she could use the envelope he handed her, for that pur-

pose; that Mrs. Schaefer protested that she did not
"have" the money, but finally took the marked enve-
lope, and that the next day, in the presence of several
persons whom he had called as witnesses, he took from
the post office in Des Plaines the identical envelope he
had delivered to Mrs. Schaefer, opened it and found
in it $40 in money and a letter. He produced and
identified the marked envelope, but when asked to pro-
duce the letter, he testified that he had "not seen it
for some time," that he had "put it some place" and
could not find it. From the bill of exceptions in the
slander suit, it appears that he was not asked to give
and did not state the contents of the letter; that he was
not asked who "Lee" was, and that the only questions
asked of him as to Lee's whereabouts were: "Is he in
court?" and, "He is not in the city?" and that Bar-
chard answered both questions in the negative. Mrs.
Graupner testified that Barchard gave her a similar
envelope, which was produced on the trial, and that
she saw him give one to Mrs. Schaefer. Mrs. Schaefer
denied that she ever received such an envelope from
Barchard and denied sending him a letter with money
in it at any time.

The amended bill in the present case charges that
the testimony of Barchard and of Mary Graupner in
the slander suit, that he gave an envelope to Mrs.
Schaefer for the purpose stated by him, was false and
perjured; that Barchard never delivered such an en-
velope to Mrs. Schaefer and she knew nothing of it
or its contents; that Barchard, Mrs. Graupner and
August Moldenhauer, Mrs. Graupner's father, con-
spired to manufacture and introduce the false evidence
to make it appear that Mary Schaefer was the con-
fessed thief; that in pursuance of such conspiracy,
they drafted a letter reading as follows:

"Mr. Barchat: You find fourty dolars you Told me
if I give this Bank you would make it al stil and I
would get no truple if you do this and Choule dont

find out I wil give you ten Dolers for you when is al still'' and caused the same to be written ''in imitation of the handwriting of the said Mary Schaefer'' by William T. Low, Barchard's confidential clerk, and placed in an envelope addressed by Low to Barchard containing $40 in money, and themselves caused the envelope so prepared and filled to be deposited in the post office in Des Plaines; that when Barchard testified that he had ''lost or mislaid'' this letter, he and they knew it was in Barchard's possession and was wilfully suppressed by him for the reason that its production at the trial ''would have established the perjury of Barchard and other witnesses in behalf of defendant and their fraud''; that Mary Schaefer could write nothing in English except her name, and if the letter had .been produced, ''it could have been clearly demonstrated'' that it was a forgery and that Barchard's testimony with reference thereto was false; that ''directly after'' the burglary, Mary Moldenhauer admitted her guilt to Barchard, but at her request and that of her father, he proceeded to ''unlawfully procure'' as witnesses persons who were willing to testify that she was elsewhere at the time it was claimed she entered Mrs. Kolberg's house, and to have such persons rehearse the testimony they were to give; that the alleged conspirators also caused Barchard to testify that the name of the man who addressed the envelopes was Lee, instead of Low, in order that Hintz might not be able to locate him; and that because of these matters, Hintz was prevented from discovering the alleged perjury and fraud and ''the necessary evidence thereof'' until August 19, 1910—20 years after the trial, six years after Barchard's death and nearly a year before this suit was commenced—at which time, it is alleged, John Hintz learned, from a son of Barchard and from his divorced wife, that the latter could testify that the real facts were as charged in the bill.

All these charges of the bill were specifically denied in defendants' joint answer, and they set up as an affirmative defense that in January, 1892, John Hintz filed a bill containing the same charges of conspiracy, perjury and fraud; that he alleged in that bill that he had then learned that the letter which Barchard claimed he received from Mrs. Schaefer was in the possession of Barchard's wife; that it was not written by Mrs. Schaefer and that if granted a new trial he would be able to prove this to be true and to compel the production of the letter; that the bill also prayed for an injunction, restraining the sheriff from levying an execution on certain of the real estate of John Hintz; that a temporary injunction was issued which, after answers were filed to the bill, was dissolved, on motion of the defendants, supported by certain affidavits, which were attached to defendants' answer in this case. Among such affidavits was one of Ira Barchard, made and filed in July, 1892, denying the charges of conspiracy, perjury and fraud, alleging that his testimony in the slander suit was true, including his statement that the letter referred to in the bill had been lost or mislaid; that at the time of the trial, "no particular stress was laid upon the letter"; that he was not asked by either side to make a search for it, and that he afterwards found it at his home in Des Plaines; that the facts and circumstances connected with the "letter episode" were common talk in Des Plaines and were known to complainant's attorneys, Van Buren & Moak, long before the trial, and that "the deposition of William T. Lee, who addressed said envelopes at this affiant's request, was taken at the office of Walker, Furthmann & Judd long before the trial, when the several envelopes were produced and identified by said Lee." Barchard's affidavit also contained a verbatim copy of the letter. The answer further alleges that a final decree was entered in that case in May, 1893, dismissing the bill for want of

equity; that the appeal of Hintz therefrom to the Appellate Court was dismissed for failure to file a transcript of the record in time; that thereafter Hintz sued out a writ of error in the Appellate Court, and in October, 1898, the decree of the lower court was affirmed. (The opinion of the Appellate Court shows that the *praecipe* record there filed did not contain the evidence. 78 Ill. App. 514.)

At the time of the hearing before the master in chancery in 1919, many of the 32 witnesses who testified in the slander suit were dead and the whereabouts of others were unknown. Mrs. Graupner in her testimony enumerated 20 of such witnesses who had died since that suit was tried, including John Hintz, August Moldenhauer, Ira Barchard, Mary Schaefer, Carl Schaefer, William Kolberg, and the clergyman who, 39 years ago, made the announcement that preceded the utterance by complainant's grandfather of his alleged slanderous statements. Apparently, all who were living and were then available testified. The transcript of this testimony covers 500 pages in a record of over 1,500 typewritten pages. The master found, in substance, that John Hintz knew, or should have known, when he filed his first bill of review in 1892, all the material facts regarding the alleged conspiracy, perjury and fraud; that while the alleged conspiracy and fraud charged in complainant's bill of complaint were incidental to the issues presented in the slander suit, they became and were direct and material issues in the subsequent proceedings brought by Hintz in 1892, in which he sought to obtain a new trial, and that such issues were determined in that suit by a court of competent jurisdiction and are now *res adjudicata;* that upon the question of fact in the present suit, as to whether there was a conspiracy or fraud as charged, the evidence was conflicting, being supported by the testimony of Mrs. Doane, the former wife of Ira Barchard, and Frank Barchard, his son, with some

slight corroboration by William T. Low, and being contradicted by the evidence of eight persons, most of whom were witnesses in the slander suit and all of whom testified that they knew of no conspiracy or school for perjury; that the evidence does not preponderate in favor of complainant; that the complainant was guilty of laches; and that because of the death of most of the important witnesses, including all but one of the parties to the alleged conspiracy, it would be prejudicial to the rights of the parties to require the issues of the slander suit to be again tried without the personal presence of such witnesses.

We have carefully studied the abstract and much of the transcript of the evidence in this case, and after due consideration of the same and the arguments of counsel, we are convinced that the chancellor did not err in approving the master's report and dismissing the bill for want of equity.

The case of *Boyden v. Reed,* 55 Ill. 458, bears a striking resemblance to this case, in many respects. There, in 1868, a bill was filed to impeach for fraud a decree rendered in favor of one Kemp and against the complainant in 1855, which had been affirmed by the Supreme Court. The bill of review charged that the decree was obtained by Kemp through his fraud and the perjury of John Shank and his wife, Parmelia, who were suborned, bribed and procured by Kemp to bear false witness to the effect that a certain writing was an absolute agreement to convey land in fee simple, well knowing that it was intended to be merely a security for the payment of money loaned. The opinion states that the bill was not filed until five years after the death of Kemp and not until after the death of John Shank, and holds the evidence of fraud to be insufficient and that complainant was guilty of laches. The evidence principally relied upon to establish the fraud of Kemp in procuring the former decree was

the testimony of Parmelia Shank, and her daughter and one other witness, as to alleged admissions of Kemp and Shank. As to such testimony and its weight, the court said (p. 464):

"No doubt is entertained of the power of a court of chancery to look into a judgment or decree of any court, and if it is found that such a decree or judgment was obtained by fraud, to cancel and vacate the same. (Citing authorities.) But this will never be done, except upon the most satisfactory evidence. Such evidence is wholly wanting in this case. After the lapse of many years, and after the death of the principal actors in the original cause, for the purpose of impeaching the former decree, Parmelia Shank, and her daughter, Minnie, are brought forward to testify to admissions made by Kemp, in his life time, and the witness, John Shank, both of whom have long since been dead. * * * To the same effect, also, is the testimony of Cummings Cherry. The testimony of all these witnesses is clouded with grave suspicion, and is given under such circumstances as tend, most strongly, to weaken and destroy its force. Mrs. Shank is now an old woman, * * * and she not only testifies to her own crime of perjury in swearing falsely on the former hearing, but she and her daughter both testify, that their now dead husband and father was guilty of the crime of willful and corrupt perjury, and reproduce his deliberate admissions of that fact. Such conduct, to us, seems unnatural, and * * * their evidence, to say the least of it, is too unsatisfactory in its nature to be relied upon with sufficient confidence to set aside and vacate a solemn decree of court that has stood for thirteen years, and has been affirmed by the highest judicial tribunal in the State." We think the same conclusion must be reached in this case as to the testimony of the former wife and son of Ira Barchard. Moreover, in one important particular at least—that of the marking of the envelopes by Barchard—the tes-

timony of Low contradicts the testimony of Barchard's wife and supports his testimony.

In the same case (55 Ill. 463) it was said that ''The general rule is, that evidence that tends simply to impeach testimony given in the former case will not be regarded as sufficient to sustain a bill of review. *Smith v. Lowry,* 1 Johns. Ch. 320.'' The rule thus stated is also mentioned in the following additional cases: *United States v. Throckmorton,* 96 U. S. 61; *Vance v. Burbank,* 101 U. S. 514; *Estes v. Timmons,* 199 U. S. 391; *Lewis v. Topsico,* 201 Ill. 320, 329; *Adamski v. Wieczorek,* 93 Ill. App. 357; *Wieczorek v. Adamski,* 114 Ill. App. 161; *Karsten v. Winkelman,* 126 Ill. App. 418, 423. In *Evans v. Woodsworth,* 213 Ill. 404, 407, this rule is referred to in the following language: ''Courts of equity will not, however, set aside a decree upon the ground that it was obtained by false evidence, but only for fraud which gives a court colorable jurisdiction over the defense presented. (*Burton v. Perry,* 146 Ill. 71, citing *Caswell v. Caswell,* 120 id. 377.)''

For the reasons given the decree is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.